GAZETTE v CITY OF PONTIAC (ON REMAND)

Docket No. 200391. Submitted January 14, 1997, at Lansing. Decided February 18, 1997, at 9:00 A.M. Leave to appeal sought.

Cheriee Gazette, for herself and as personal representative of the estate of Pamela K. Bandy, brought an action in the Oakland Circuit Court against the City of Pontiac, its police department, and two of its police officers, alleging, among other things, violations of due process and equal protection under the state constitution, violations of the Handicappers' Civil Rights Act and the Civil Rights Act, and negligence. Two days before Bandy was found dead in the trunk of her car by Waterford Township police who had stopped the car's driver, a car-wash employee, for a traffic violation and discovered that the driver was the subject of an outstanding warrant, the plaintiff and other members of Bandy's family had contacted the Pontiac Police Department after Bandy failed to return home from the car wash. The plaintiff gave the police a description of Bandy's car, told them that Bandy was an alcoholic, and requested that the police investigate the car wash and check for unauthorized withdrawals from Bandy's bank account. The court, Robert L. Templin, J., granted summary disposition for the defendants, ruling that the plaintiff had failed to establish a special relationship between Bandy and the Pontiac police such that the Pontiac police owed a duty to Bandy and rejecting the plaintiff's claim that the defendants had failed to provide public services to Bandy because she was an alcoholic and thereby violated the Handicappers' Civil Rights Act and the Civil Rights Act. The Court of Appeals, CAVANAGH, P.J., and JANSEN and D. C. KOLENDA, JJ., affirmed. 212 Mich App 162 (1995). The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for reconsideration in light of *White v Beasley*, 453 Mich 308 (1996). 453 Mich 973 (1996).

On remand, the Court of Appeals *held*:

1. As held in *White*, the public-duty doctrine insulates a police officer from tort liability for the negligent failure to provide police protection unless an individual satisfied the special-relationship exception to the doctrine. In this case, the plaintiff failed to establish that there was a special relationship between Bandy and the defendants because the plaintiff failed to allege two of four elements necessary to establish a special relationship: the plaintiff

failed to allege that there was contact between Bandy and the defendants and that Bandy justifiably relied on any affirmative action taken by the police department.

2. The previous resolution of the civil rights and constitutional claims are unaffected by *White.*

Affirmed.

NEGLIGENCE — POLICE OFFICERS — PUBLIC-DUTY DOCTRINE.

The public-duty doctrine insulates a police officer from tort liability for the negligent failure to provide police protection unless an individual satisfied the special-relationship exception to the doctrine; in determining whether a special relationship existed, a court considers whether there was an assumption by the police officer, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; knowledge on the part of the police officer that inaction could lead to harm; some form of direct contact between the police officer and the injured party; and justifiable reliance by the injured party on the police officer's affirmative undertaking.

*Dib & Fagan, P.C.* (by *Barry S. Fagan*), for the plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Marcia L. Howe*), for the defendants.

Before: CAVANAGH, P.J., and WAHLS and JANSEN, JJ.

CAVANAGH, P.J. This case is before us for the second time. In our first decision, we affirmed the trial court's grant of summary disposition pursuant to MCR 2.116(C)(8). *Gazette v Pontiac*, 212 Mich App 162; 536 NW2d 854 (1995). The Supreme Court has remanded the case for reconsideration in light of its recent decision in *White v Beasley*, 453 Mich 308; 552 NW2d 1 (1996). 453 Mich 973 (1996). We again affirm.

The facts of the case are set forth in our prior opinion:

On September 18, 1990, [Pamela Kay] Bandy left her home around 8:30 A.M. intending to get her car washed at

the Perry Car Wash in Pontiac. When Bandy did not return home after a reasonable time had elapsed, plaintiff, Bandy's daughter, became concerned. Plaintiff and other members of the family contacted defendant Pontiac Police Department. Plaintiff gave the police a description of Bandy's white 1981 Cadillac Fleetwood, which had an unusual mark on the driver's door. Plaintiff also requested that the police investigate the Perry Car Wash, and she provided them with Bandy's bank account numbers so that they could inquire into whether unauthorized withdrawals had been made.

During the course of her conversation with the police, plaintiff mentioned that Bandy was an alcoholic and had recently been released from a rehabilitation program. Plaintiff informed the police that Bandy did not normally disappear for extended periods. Nevertheless, according to plaintiff, the police stated that they were familiar with Bandy, that Bandy was most likely on a drinking binge, and that she would eventually reappear. Plaintiff claims that the police informed her that they had investigated the car wash, had checked Bandy's bank accounts, and had discovered no evidence of wrongdoing, although apparently, in fact, they had done neither.

On September 20, 1990, the Waterford Township police pulled over a white 1981 Cadillac Fleetwood for a routine traffic violation. After discovering that the driver, Robert Hogan, had an outstanding bench warrant, the police searched the car and discovered Bandy's body in the trunk. Estimates placed the time of death at between twelve and thirty-six hours before the body was found. The cause of death was determined to be a combination of starvation, dehydration, and methanol poisoning from consumption of windshield washer fluid that had been in the trunk. Bandy had been physically and sexually assaulted.

Hogan was an employee of the Perry Car Wash. Between September 18 and September 24, Hogan had driven Bandy's Cadillac around Pontiac. During the time that Bandy was missing, unauthorized withdrawals were made from her bank account.

On September 23, 1992, plaintiff filed a complaint in the Oakland Circuit Court, alleging violations of the Michigan

Constitution, the Handicappers' Civil Rights Act (HCRA), MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*, the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and negligence. . . .

On July 16, 1993, defendants moved for summary disposition pursuant to MCR 2.116(C)(8). The trial court noted that the police owe a duty to the general public and that the police owe a duty to a specific individual only if a special relationship has been formed. The trial court ruled that plaintiff had not shown that a special relationship existed between Bandy and defendants. The trial court also rejected plaintiff's argument that defendants failed to provide public services to Bandy because she was an alcoholic and thereby violated the HCRA and the Civil Rights Act. The trial court granted defendants' motion for summary disposition in an order entered September 28, 1993. [*Gazette, supra* at 165-167.]

I

The Supreme Court has recently held that the public-duty doctrine applies in Michigan. *White, supra* at 316. The public-duty doctrine is a doctrine of tort law that determines whether a duty in tort exists. *Id.* at 323. Applied to police officers, the public-duty doctrine insulates officers from tort liability for the negligent failure to provide police protection unless an individual satisfies the special-relationship exception to the doctrine. *Id.* at 316. The rationale is that police officers should not be liable for ensuring the general public's welfare simply because their job title lists them as "police officers." *Id.* at 318.

In determining whether a special relationship has been formed in cases involving police officers, the Supreme Court has adopted the test provided in *Cuffy v City of New York*, 69 NY2d 255; 513 NYS2d 372; 505 NE2d 937 (1987). Under the *Cuffy* test, a spe-

cial relationship exists between police officers and a plaintiff when there is:

> "(1) an assumption by the [police officer], through promises or actions, of an affirmative duty to act on behalf of the party who was injured;
>
> (2) knowledge on the part of the [police officer] that inaction could lead to harm;
>
> (3) some form of direct contact between the police officer and the injured party; and
>
> (4) that party's justifiable reliance on the [police officer's] affirmative undertaking." [See *White, supra* at 320-321, quoting *Cuffy, supra* at 260.]

Plaintiff alleges that defendants failed to provide police protection to Bandy. However, police officers do not owe a duty in tort to any individual unless the facts of a case fit the special-relationship doctrine. *Id.* at 324. We find that the facts of this case do not establish a special relationship between Bandy and defendants. Plaintiff has failed to allege two of the elements necessary to the establishment of a special relationship. First, plaintiff has not alleged that there was any contact between Bandy and defendants. Second, plaintiff has failed to allege that Bandy justifiably relied on any affirmative action taken by the police department. In fact, because Bandy herself never contacted the police, she had no knowledge of a promise on which she could rely.

The facts of this case are undeniably tragic. However, "[p]olice officers should not be liable 'for failing to protect a member of the general public from a criminal act of which they were not aware but should have anticipated and prevented.'" *Id.* at 318, quoting *De Long v Erie Co*, 60 NY2d 296, 304; 469 NYS2d 611; 457 NE2d 717 (1983).

Because plaintiff has failed to allege facts sufficient to satisfy the special-relationship exception, plaintiff has failed to establish that defendants owed a duty to Bandy. As a result, plaintiff has failed to state a claim on which relief can be granted, and the trial court did not err in granting summary disposition pursuant to MCR 2.116(C)(8).

II

Because plaintiff's claims under the HCRA and the Michigan constitution are unaffected by *White*, we adhere to our previous resolution of those issues. See *Gazette, supra* at 167-170, 172-175.

Affirmed.