SMITH v JONES

Docket Nos. 215459, 215460. Submitted April 12, 2001, at Detroit. Decided
    June 5, 2001, at 9:05 A.M.

  Joseph Smith, Bessie Smith, Francesca Smith, by her next friend,
    Bessie Smith, and Angelus Williams brought an action in the Wayne
    Circuit Court against Detroit Police Officers Victor Jones and
    Shontae Jennings, seeking damages resulting from the firebombing
    of the plaintiffs' home by unknown persons. The plaintiffs alleged
    that the fire was caused by persons that the defendants had
    detained in response to a 911 call made by Joseph Smith to report
    suspicious activity in his neighborhood. The plaintiffs alleged that
    the defendants were grossly negligent in parking their vehicle, with
    the suspects inside, near the plaintiffs' residence in an attempt to
    have the plaintiffs identify the suspects, thus allowing the suspects
    to know the address of the complainant and allegedly return to the
    plaintiffs' home later that day with a firebomb. The court, Sharon
    Tevis Finch, J., entered a judgment in favor of the plaintiffs consis-
    tent with the verdict of the jury. The defendants appealed sepa-
    rately and their appeals were consolidated.

      The Court of Appeals held:

      1. The court erred in denying the defendants' motions for a
    directed verdict or judgment notwithstanding the verdict, in which
    the defendants alleged that they did not breach any duty owed to
    the plaintiffs and there was insufficient evidence of proximate
    cause.

      2. The public-duty doctrine determines the existence of a police
    officer's duty to protect an individual, rather than the general pub-
    lic, from harm. The public-duty doctrine shields the defendants
    from liability because sufficient evidence of a special relationship
    between the defendants and the plaintiffs is lacking.

      3. Evidence of proximate cause was not established by the
    proofs. The judgment must be reversed and the matter must be
    remanded for entry of a judgment in favor of the defendants.

      Reversed and remanded.

1. TORTS — DUTY TO PROTECT OTHERS — CRIMINAL ACT BY THIRD PARTY.

There generally is no legal duty that obligates one person to aid or protect another; moreover, there is no duty to protect another from the criminal acts of a third party in the absence of a special relationship between the defendant and the plaintiff or the defendant and the third party.

2. TORTS — PUBLIC OFFICERS — PUBLIC-DUTY DOCTRINE.

The public-duty doctrine determines the existence of a police officer's duty to protect an individual, rather than the general public, from harm; the doctrine insulates an officer from tort liability for the negligent failure to provide police protection unless there is a special relationship between the officer and an individual plaintiff; a special relationship exists where there is an assumption by the officer, through promises or actions, of an affirmative duty to act on the behalf of the individual plaintiff, knowledge on the part of the officer that inaction could lead to harm, some form of direct contact between the officer and the individual plaintiff, and justifiable reliance by the individual plaintiff on the officer's affirmative undertaking.

*Arnold E. Reed & Associates, P.C.* (by *Arnold E. Reed*), for the plaintiffs.

City of Detroit Law Department (by *Sharon D. Blackmon*, Assistant Corporation Counsel), for the defendants.

Before: GRIFFIN, P.J., and JANSEN and GAGE, JJ.

GRIFFIN, P.J. In these consolidated appeals, defendant Detroit Police Officers Victor Jones and Shontae Jennings appeal as of right a judgment totaling $3,808,500 entered for damages allegedly sustained by plaintiffs as a result of a firebombing of their home. We reverse and remand and hold that pursuant to the public-duty doctrine defendants owed no duty to plaintiffs.

I

The gravamen of plaintiffs' complaint was that plaintiff Joseph Smith made a 911 call reporting suspicious activity in the alley near plaintiffs' home and, in response to the call, defendant police officers detained several suspects and placed them in the defendants' patrol car. In the process of investigating the matter, defendants took the suspects by plaintiffs' house, allegedly parking the patrol car across from plaintiffs' home while defendant Jones engaged in a brief conversation with plaintiff Angelus Williams at her front door. No evidence of a crime was ever found and defendants released the suspects in the same neighborhood. That evening, plaintiffs' home was firebombed, allegedly causing plaintiffs to suffer psychological injury and property damage. Plaintiffs averred that it was the suspects detained by defendants who returned and firebombed their home, purportedly as an act of retaliation against plaintiffs for making the 911 call. It was alleged that defendants' actions in bringing the suspects by plaintiffs' home alerted the suspects regarding the complainants' address. However, no persons were ever charged with or convicted of the firebombing.

Plaintiffs brought the instant lawsuits against defendants alleging gross negligence falling outside the immunity afforded by the governmental tort liability act, MCL 691.1407. Specifically, plaintiffs alleged that defendants were grossly negligent in parking their patrol car, with the suspects in it, in front of the plaintiffs' house and asking plaintiffs to identify the suspects, thereby creating, in violation of department regulations, an otherwise nonexistent opportunity for

the suspects in the defendants' custody to determine the identity of plaintiffs as the persons who had reported the suspects' activities to the authorities and ultimately resulting in the retaliatory firebombing. Plaintiffs further alleged that defendants had a duty to protect them, based on defendants' verbal assurances of safety and plaintiffs' reliance thereon, and failed to do so.

Following a two-week trial, the jury returned a verdict of $720,000 in favor of plaintiff Joseph Smith, $908,500 in favor of Bessie Smith, $1,274,000 in favor of Francesca Smith, and $906,000 in favor of Angelus Williams. Defendants now appeal the judgment entered in favor of plaintiffs.

II

On appeal, defendants argue that their motions for a directed verdict or judgment notwithstanding the verdict, based in pertinent part on the absence of a duty to plaintiffs and insufficient evidence of proximate cause, were erroneously denied by the trial court. We agree.

Motions for a directed verdict are reviewed de novo. *Jenkins v Southeastern Michigan Chapter, American Red Cross*, 141 Mich App 785, 792; 369 NW2d 223 (1985). In reviewing a denied motion for a directed verdict, this Court must determine whether the party opposing the motion offered evidence on which reasonable minds could differ. *Id.* The test is whether, viewing the evidence in the light most favorable to the adverse party, reasonable persons could reach a different conclusion. If so, the case is properly left to the jury to decide. *Id.* The same stan-

dard applies in review of motions for judgment notwithstanding the verdict. *Orzel v Scott Drug Co*, 449 Mich 550, 557-558; 537 NW2d 208 (1995). Questions of law are reviewed de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

Defendants first assert that they owed no duty to the plaintiffs by virtue of the public-duty doctrine set forth in *White v Beasley*, 453 Mich 308; 552 NW2d 1 (1996). Duty is an essential element of a claim of negligence or gross negligence. *Moning v Alfono*, 400 Mich 425, 437; 254 NW2d 759 (1977); *Flones v Dalman*, 199 Mich App 396, 402-403; 502 NW2d 725 (1993); *Madley v Evening News Ass'n*, 167 Mich App 338, 341; 421 NW2d 682 (1988). As explained by our Supreme Court in *Maiden v Rozwood*, 461 Mich 109, 131-132; 597 NW2d 817 (1999):

> Whether a duty exists to protect a person from a reasonably foreseeable harm is a question of law for the court. *Murdock v Higgins*, 454 Mich 46, 53; 559 NW2d 639 (1997); *Trager v Thor*, 445 Mich 95, 105; 516 NW2d 69 (1994). "A negligence action may only be maintained if a legal duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992).
>
> In determining whether the relationship between the parties is sufficient to establish a duty, the proper inquiry is " 'whether the defendant is under any obligation for the benefit of the particular plaintiff. . . .' " *Buczkowski v McKay*, 441 Mich 96, 100; 490 NW2d 330 (1992), quoting *Friedman v Dozorc*, 412 Mich 1, 22; 312 NW2d 585 (1981). This analysis concerns whether the relationship of the parties is of a sort that a legal obligation should be imposed on one for the benefit of another. *Id.*

See also *Krass v Tri-County Security, Inc*, 233 Mich
App 661, 668-669; 593 NW2d 578 (1999); *Terry v
Detroit*, 226 Mich App 418, 424; 573 NW2d 348 (1997);
*Baker v Arbor Drugs, Inc*, 215 Mich App 198, 203; 544
NW2d 727 (1996); *Flones, supra* at 403.

As a general rule, there is no legal duty that obli-
gates one person to aid or protect another. *Krass,
supra* at 668. Moreover, there is no duty to protect
another from the criminal acts of a third party in the
absence of a special relationship between the defen-
dant and the plaintiff or the defendant and the third
party. *Id.; Phillips v Deihm*, 213 Mich App 389, 397;
541 NW2d 566 (1995); *Papadimas v Mykonos Lounge*,
176 Mich App 40, 46-47; 439 NW2d 280 (1989). The
underlying rationale for this rule is the fact that
"[c]riminal activity, by its deviant nature, is normally
unforeseeable." *Id.*

In this vein, a special rule, the public-duty doctrine,
determines the existence of a police officer's duty to
protect an individual, rather than the general public,
from harm. In *White, supra,* at 322, a plurality of our
Supreme Court (opinion by BRICKLEY, C.J.), held that
this doctrine "is a part of the law of this state." The
public-duty doctrine provides

> "[t]hat if the duty which the official authority imposes upon
> an officer is a duty to the public, a failure to perform it, or
> an inadequate or erroneous performance, must be a public,
> not an individual injury, and must be redressed, if at all, in
> some form of public prosecution. On the other hand, if the
> duty is a duty to the individual, then a neglect to perform it,
> or to perform it properly, is an individual wrong, and may
> support an individual action for damages." [*Id.* at 316, quot-
> ing 2 Cooley, Torts (4th ed), § 300, pp 385-386.]

Applied to police officers, as it was in *White*, the public-duty doctrine "insulates officers from tort liability for the negligent failure to provide police protection unless an individual plaintiff satisfies the special-relationship exception." *White, supra* at 316. The rationale for the public-duty doctrine was summarized by the *White* plurality as follows: "Police officers must work in unusual circumstances. They deserve unusual protection." *Id.* at 321. This doctrine is a doctrine of tort law, not governmental immunity; the public-duty doctrine determines whether a duty in tort exists, not whether an individual is immune from an otherwise existing tort duty. *Id.* at 323.

The *White* Court adopted the test provided in *Cuffy v City of New York*, 69 NY2d 255; 513 NYS2d 372; 505 NE2d 937 (1987), to determine whether a special relationship has been formed in cases alleging the negligent failure to provide police protection. Under the *Cuffy* test, a special relationship exists between a police officer and an individual plaintiff when there is:

"(1) an assumption by the [police officer], through promises or actions, of an affirmative duty to act on behalf of the party who was injured;

"(2) knowledge on the part of the [police officer] that inaction could lead to harm;

"(3) some form of direct contact between the [police officer] and the injured party; and

"(4) that party's justifiable reliance on the [police officer's] affirmative undertaking . . . ." [*White, supra* at 320-321, quoting *Cuffy, supra* at 260.]

See also *Gazette v Pontiac (On Remand)*, 221 Mich App 579; 561 NW2d 879 (1997).

In the instant case, we conclude that the public-duty doctrine shields defendants from liability because sufficient evidence of a special relationship between defendants and plaintiffs is lacking. Only one of the four *Cuffy* factors is supported by the proofs. First, the evidence does not support the assumption by defendants, through promises or actions, of an affirmative duty to act on behalf of plaintiffs. Defendant Jones' alleged statement to plaintiff Angelus Williams during his neighborhood investigation and very brief encounter with her at her front door, to the effect that "don't worry about it that he'll [Jones] take care of it and he'd get back with us later," uttered in the face of no perceivable threat, is lacking in specificity and cannot reasonably be construed as a promise to protect the plaintiffs' household. See, generally, *Cuffy, supra*. Second, the record indicates that defendants lacked any knowledge that their alleged inaction could lead to harm. The persons detained by defendants were suspected of committing a nonviolent property offense, they were not currently wanted by law enforcement agencies, and there was no indication that they had a history of violent actions. The evidence shows that defendants had no knowledge of any threats made by the parties against the plaintiffs or any motive for such threats. Indeed, no one could reasonably foresee that a firebombing would result from a brief detention in a patrol car on suspicion of a nonviolent offense that did not culminate in an arrest or formal charges. Third, although the element of direct contact is present in this case, a special relationship cannot be based on direct contact alone. As the defendants aptly note, police officers have direct contact with scores of citizens in the course of a day;

such contact, in the absence of the other requisite elements outlined in *White, supra*, cannot serve to establish a special relationship. Finally, the fourth element, justifiable reliance, is wholly unsupported by the evidence. The alleged statement made by defendant Jones to Angelus Williams was so general and nebulous that it cannot reasonably be construed as invoking reliance on defendants for protection.

We therefore hold that the public-duty doctrine applies to the present case. Utilizing the *Cuffy* factors and reviewing the evidence and all legitimate inferences in the light most favorable to plaintiffs, *Jenkins, supra*, reasonable minds would not differ in finding that no special relationship existed to create a duty to plaintiffs and justify exposure of these defendant police officers to liability for the criminal acts of third parties. *White, supra; Gazette, supra*. As Chief Justice BRICKLEY noted in *White, supra* at 318, quoting *De Long v Erie Co*, 60 NY2d 296, 304; 469 NYS2d 611; 457 NE2d 717 (1983), "[p]olice officers should not be liable 'for failing to protect a member of the general public from a criminal act of which they were not aware but should have anticipated and prevented . . . .'" Consequently, defendants' motion for judgment notwithstanding the verdict on the basis that defendants owed no duty to plaintiffs pursuant to the public-duty doctrine was improperly denied by the trial court.[1]

---

[1] Plaintiffs also argue that the public-duty doctrine should not even apply under the circumstances. Citing Justice BOYLE's concurring opinion in *White, supra* at 325-330, plaintiffs contend that the doctrine only applies to instances of nonfeasance, not misfeasance. However, the Michigan courts have yet to address or endorse this dichotomy in the context of the public-duty doctrine, and we decline to do so in this case, for several reasons. First, the allegations set forth in plaintiffs' complaint are

III

Further, even if we were to conclude that defendants owed a duty to plaintiffs under these circumstances, we hold that the judgment rendered against defendants must nonetheless be reversed because evidence of proximate cause was not established by the proofs. The governmental immunity statute provides in pertinent part that governmental employees may be liable for grossly negligent conduct if that conduct is *"the proximate cause of the injury . . . ."* MCL 691.1407(2)(c) (emphasis added). Recently, in *Robinson v Detroit*, 462 Mich 439, 458-459; 613 NW2d 307 (2000), our Supreme Court redefined proximate cause as it applies to governmental employees under this statute. The *Robinson* Court expressly overruled the Court's previous decision in *Dedes v Asch*, 446 Mich

---

hybrid in nature, alleging both misfeasance and nonfeasance. Plaintiffs alleged in one count of their complaint that defendants were grossly negligent in bringing the suspects to the plaintiffs' home in the patrol car contrary to departmental regulations, thereby giving the burglary suspects the opportunity to identify the source of the 911 call and creating for plaintiffs a previously nonexistent danger (misfeasance). In a separate count, plaintiffs alleged defendants' failure to protect (nonfeasance) on the basis of Officer Jones' subsequent verbal assurance of safety. It is difficult, to say the least, to meaningfully distinguish between these acts of misfeasance and nonfeasance when they arise out of a connected chain of events. The same behavior, taken as a whole sequence of events, can be conveniently characterized as either a negligent act or a negligent failure to act. Second, even assuming arguendo that the public-duty doctrine does not apply to the present facts, plaintiffs' failure to prove the essential element of proximate cause, necessary to sustain a claim against defendants in avoidance of governmental immunity, is fatal to plaintiffs' claim against these defendants. See our discussion later in this opinion. Finally, examining the merits of the distinction between nonfeasance and misfeasance in the present case, it can be effectively argued that the nature of the negligent act is relevant to whether a special relationship exists (using the *Cuffy* analysis), not whether a special relationship is required. As previously quoted, Justice COOLEY's definition of the public-duty doctrine encompasses not only " 'a failure to perform [the duty],' " but also " '*an inadequate or erroneous performance*.' " *White, supra* at 316 (emphasis added).

99; 521 NW2d 488 (1994), and concluded as follows regarding construction of the phrase "*the* proximate cause":

> We overrule *Dedes* to the extent that it interpreted the phrase "the proximate cause" . . . to mean "a proximate cause." The Legislature's use of the definite article "the" clearly evinces an intent to focus on one cause. The phrase "the proximate cause" is best understood as meaning the one most immediate, efficient, and direct cause preceding an injury. [*Robinson, supra* at 458-459.]

The parties disagree whether *Robinson* should be given retroactive application to the present case. Although retroactive application may not be appropriate given the substantial change in established law effected by that judicial decision, see *Lindsey v Harper Hosp*, 455 Mich 56, 68; 564 NW2d 861 (1997), we need not resolve this question because under either the *Dedes* or *Robinson* interpretations of the statute, the proofs in this regard are still deficient. Plaintiffs have failed to establish that defendants' conduct was "a" proximate cause or "the" proximate cause of their injuries. To do so would require two leaps of logic: first, that the defendants somehow communicated to the suspects that the initial 911 call came from plaintiffs' address and, second, that these same suspects firebombed plaintiffs' house. Neither of these facts is substantiated. In fact, the individuals who firebombed plaintiffs' house are unknown. The criminal act of the persons, identities still unknown, in firebombing plaintiffs' house were extraordinary and remote consequences of defendants' alleged gross negligence, entirely unforeseeable by the defendants and beyond the limit of legal liability. See *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475

(1994); *Papadimas, supra* at 46-47; 2 Restatement Torts, 2d, §§ 442 and 448.

IV

We therefore conclude that the trial court erred in denying defendants' motion for judgment notwithstanding the verdict. Accordingly, we reverse and remand for entry of judgment in favor of defendants. In light of this disposition, we need not address defendants' other appellate issues.

Reversed and remanded. We do not retain jurisdiction.