ROBERTSON v BLUE WATER OIL COMPANY

Docket No. 254052. Submitted October 11, 2005, at Lansing. Decided
    November 8, 2005, at 9:00 a.m. Leave to appeal sought.
    Philip and Sharon Robertson brought an action in the St. Clair
        Circuit Court against Blue Water Oil Company, seeking economic
        and noneconomic damages for injuries Philip Robertson sustained
        in a slip and fall on the defendant's ice-covered, gas station
        parking lot and damages for Sharon Robertson's loss of consor-
        tium. The court, Daniel J. Kelly, J., denied the defendant's motions
        for summary disposition, directed verdict, and judgment notwith-
        standing the verdict, and denied the plaintiffs' motion for a new
        trial or additur and a motion in limine. The jury awarded Philip
        Robertson $260,000 in noneconomic damages and $86,000 in
        economic damages and awarded Sharon Robertson $17,000 in
        damages for her derivative claim. The defendant appealed the
        denial of its motions, and the plaintiffs cross-appealed the denial of
        their motions.

    The Court of Appeals *held*:

    1. The trial court did not err in finding that the special aspect
    of unavoidability differentiated this case from the typical open and
    obvious danger case. Because the icy conditions here were open
    and obvious, the defendant would have no liability in the absence
    of special aspects that nonetheless made a risk of harm unreason-
    able. Special aspects exist if a condition is effectively unavoidable
    or constitutes an unreasonably high risk of severe harm. An open
    and obvious accumulation of snow and ice, by itself, does not
    feature any special aspects. However, because there was no alter-
    native, ice-free path from the gasoline pumps to the station's
    convenience store, the condition in this case was effectively
    unavoidable. A reasonable trier of fact could rationally find that
    Philip Robertson was effectively trapped because he could not
    have safely driven away from the premises without windshield
    washer fluid.

    2. Philip Robertson was an invitee of the defendant. The
    defendant's argument that Robertson could have gone elsewhere
    is inconsistent with the defendant's purpose of operating its gas
    station. The defendant's argument would lead to the irrational
    conclusion that a business owner who invites customers onto its

premises would never have any liability to those customers for hazardous conditions as long as the customers even technically had the option of declining the invitation. Where the defendant has invited the public onto its premises for commercial purposes, it may not be absolved of its duty of care on the basis that Robertson could have gone elsewhere for his needs.

3. The trial court erred in denying the plaintiffs' motion for additur or a new trial because the jury award of economic damages was irrational and unsupported by the evidence. The trial court instructed the jury to consider the amount of reasonable and necessary medical care, treatment, and services, as well as the loss of earning capacity for economic damages, and the court had ruled as a matter of law that the Philip Robertson's reasonable and necessary medical expenses were $120,256.07. The verdict for $86,000 for economic loss suggests that the jury ignored the established sum of medical expenses. The portion of the jury award relating to economic damages must be vacated and the case must be remanded for a trial limited to that issue.

4. The trial court correctly refused to grant additur or a new trial regarding Sharon Robertson's award of $17,000 for loss of consortium. The motion presented a list of factors already considered by the jury and the evidence rationally supports the award.

Affirmed in part, vacated in part, and remanded for a trial limited to the issue of the plaintiff's economic damages.

KELLY, P.J., dissenting, would reverse the trial court's denial of the defendant's motions, stating that the icy condition on the premises was open and obvious and was not effectively unavoidable. The risks of falling on snow or ice are open and obvious. The defendant did not have a duty to protect Philip Robertson from the dangers associated with the ice-covered lot unless there were special aspects that made the condition effectively unavoidable or unreasonably dangerous.

Robertson was not required to confront an unexpected risk, nor was he effectively trapped. He could have gone to another 24-hour service station. Nothing about the defendant's premises forced Robertson to cross the icy premises. To conclude otherwise would improperly change the focus from an examination of the premises to an examination of the personal circumstances of Robertson.

NEGLIGENCE — PREMISES LIABILITY — INVITEES — OPEN AND OBVIOUS DANGERS — SPECIAL ASPECTS.

A premises possessor is not required to protect an invitee from open and obvious dangers in the absence of special aspects that make a

risk of harm unreasonable; special aspects exist if a condition is effectively unavoidable or constitutes an unreasonably high risk of severe harm.

*Marshall Lasser, P.C.* (by *Marshall Lasser*), for Philip and Sharon Robertson.

*Moffett & Dillon, P.C.* (by *Jerry A. Lascoe*), for Blue Water Oil Company.

Before: KELLY, P.J., and METER and DAVIS, JJ.

DAVIS, J. Defendant appeals as of right the denials of its motions for summary disposition, for directed verdict, and for judgment notwithstanding the verdict. Plaintiffs cross-appeal the denials of their motion for a new trial or additur and their motion in limine. This case arose when plaintiff[1] slipped and fell on an ice-covered parking lot at defendant's gas station as he walked from the pump where he had fueled his truck to the station's convenience store. We affirm in part, reverse in part, and remand.

The circumstances surrounding this case involve an unusually severe and uniform ice storm that covered the entire area surrounding defendant's station. The sole employee on duty began receiving complaints from customers, including several truck drivers, about the "extremely icy" conditions in the parking lot at approximately 1:00 a.m. The lot was also described as "a disaster," "a mess," and "a sheet of ice." At approximately 2:00 a.m., the employee called the station manager at home and notified him that someone needed to salt the lot "before there was an accident." The station manager told her that a contractor would deal with the

---

[1] Sharon Robertson's claim was derivative for loss of consortium. For clarity, we will use the singular "plaintiff" to refer to Philip Robertson.

situation, and he went back to sleep. At 4:30 a.m., the employee called the contractor personally, but the contractor did not arrive until after plaintiff's accident and was not responsible for salting the truck service area. A police officer advised the employee at about 2:00 a.m. that the icy conditions needed to be dealt with and testified at trial that there had been freezing rain in the area between 1:00 a.m. and at least 5:40 a.m. The employee telephoned 911 when another truck driver came into the station's store to report plaintiff's accident. The station manager arrived at approximately 5:45 a.m., at which time he saw plaintiff being attended by medical personnel. He testified that he could not differentiate between ice and wet pavement at the time, and, by 7:00 a.m., he had received reports of a car and a truck sliding into protective posts. Defendant's vice president of operations arrived at approximately 6:30 a.m. and salted the truck service area personally at that time.

Plaintiff was employed as a truck driver and required by his employer to fuel his truck at the beginning of the day. In furtherance of that requirement, plaintiff was a regular customer of defendant almost every weekday. Plaintiff generally paid at the pump and then purchased a cup of coffee in the station's convenience store. On the day of the accident, plaintiff was aware that his driveway and defendant's parking lot were icy and that the roads had been salted. Before setting out, plaintiff's inspection of the windshield washer fluid in the truck caused him to believe that he had enough. Later, however, spray from passing cars exhausted the fluid in the reservoir by the time he reached defendant's station. Plaintiff paid at the pump as usual and intended to purchase coffee and washer fluid from the convenience store, but slipped on the ice, fell, and sustained injuries.

There is no serious dispute that the parking lot was openly and obviously icy. Thus, plaintiff's case rested on the existence of "special aspects" taking it out of the ordinary application of the open and obvious danger doctrine. Plaintiff argued that the conditions were effectively unavoidable. Defendant argued that the conditions were avoidable because plaintiff could have gone elsewhere or refrained from purchasing washer fluid. The trial court and the jury both found the conditions effectively unavoidable, although the jury found plaintiff 30 percent at fault for his own injuries. The jury verdict awarded plaintiff $260,000 in noneconomic damages and $86,000 in economic damages, and it awarded Sharon Robertson $17,000 in noneconomic damages.

We first address defendant's argument that the trial court erred in denying its motions for summary disposition, directed verdict, and judgment notwithstanding the verdict. We review de novo these motions and view the evidence in the light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 118-120; 597 NW2d 817 (1999); *Morinelli v Provident Life & Accident Ins Co*, 242 Mich App 255, 260-261; 617 NW2d 777 (2000); *Smith v Jones*, 246 Mich App 270, 273-274; 632 NW2d 509 (2001). Defendant argues that the trial court erred in finding that the "special aspect" of unavoidability differentiated this case from the typical open and obvious danger case. We disagree.

Because the icy conditions here were open and obvious, defendant would have no liability in the absence of "special aspects" that "make a risk of harm unreasonable nonetheless," irrespective of the specific kind of negligence alleged. *Millikin v Walton Manor Mobile Home Park, Inc*, 234 Mich App 490, 498; 595 NW2d 152 (1999), citing *Bertrand v Alan Ford, Inc*, 449 Mich 606,

611; 537 NW2d 185 (1995). "Special aspects" exist if the condition "is effectively unavoidable" or constitutes "an unreasonably high risk of severe harm." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 518; 629 NW2d 384 (2001). However, the risk must be more than merely imaginable or premised on a plaintiff's own idiosyncrasies. *Id.* at 519 n 2. An open and obvious accumulation of snow and ice, by itself, does not feature any "special aspects." *Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 332-333; 683 NW2d 573 (2004). Plaintiff has not cross-appealed the trial court's conclusion that there was no unreasonably high risk of harm, so we limit our analysis to whether the condition was effectively unavoidable.

Defendant argues that the condition was effectively avoidable because plaintiff could have gone to a different service station to make his purchases of fuel, coffee, and windshield washer fluid. However, one of the characteristics of the icy condition is that it was brought about by an unusually severe and uniform ice storm covering the entire area. Plaintiff patronized defendant's station almost every weekday pursuant to his employer's directions to fuel his truck first thing in the morning, and he intended to purchase wiper fluid because he was out of fluid and the weather was bad. The record contains no evidence that there existed any available alternatives. Even if there were, the scope of the inquiry is limited to "the objective nature of the condition of the premises at issue." *Lugo, supra* at 523-524. See also *Bragan ex rel Bragan v Symanzik*, 263 Mich App 324, 331-332; 687 NW2d 881 (2004). Therefore, the only inquiry is whether the condition was effectively unavoidable *on the premises*. Here, there was clearly no alternative, ice-free path from the gasoline pumps to the service station, a fact of which defendant

had been made aware several hours previously. The ice was effectively unavoidable.

Defendant argues that the ice was avoidable because plaintiff was not "effectively trapped." *Joyce v Rubin*, 249 Mich App 231, 242; 642 NW2d 360 (2002). However, reliance on *Joyce* is misplaced for a number of reasons. Although we discussed the possibility that the plaintiff in *Joyce* could have gone to the premises on a different day, our holding was based on the plaintiff's own testimony that she was aware and, indeed, had made use, of an available alternative route. *Id.* at 242-243. In any event, a reasonable trier of fact could rationally find that plaintiff *was* "effectively trapped" because it would have been sufficiently unsafe, given the weather conditions, to drive away from the premises without windshield washer fluid.

Finally, and more significantly, plaintiff was a *paying customer* who was on defendant's premises for defendant's commercial purposes, and thus he was an *invitee* of defendant. See *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596-598, 603-604; 614 NW2d 88 (2000). As our Supreme Court noted, "invitee status necessarily turns on the existence of an 'invitation.' " *Id.* at 597-598. Defendant's contention that plaintiff should have gone elsewhere is simply inconsistent with defendant's purpose in operating its gas station. The logical consequence of defendant's argument would be the irrational conclusion that a business owner who invites customers onto its premises would never have any liability to those customers for hazardous conditions as long as the customers even technically had the option of declining the invitation. Although we did not discuss the issue at the time, it is clear in retrospect that the plaintiff in *Joyce*, a former live-in caregiver who was at the time merely removing her personal

belongings from the defendant's private residence, was a licensee to whom a lesser duty was owed. See *Joyce, supra* at 233; *Stitt, supra* at 596.

Even if the record showed that plaintiff was aware of a realistic, safe alternative location to purchase his fuel, coffee, and windshield washer fluid, where defendant has *invited* the public, and by extension plaintiff, onto its premises for commercial purposes, we decline to absolve defendant of its duty of care on that basis. To do so would be disingenuous. Therefore, we conclude that the trial court appropriately denied defendant's motions.

We then turn to plaintiff's cross-appeal. We first address plaintiff's allegation that the trial court erred in denying his motion for additur or a new trial on the asserted ground that the jury's award of economic damages was irrational and unsupported by the evidence. We agree.

We review a denial of a motion for additur or a new trial for an abuse of discretion. *Hill v Sacka*, 256, Mich App 443, 460; 666 NW2d 282 (2003). When reviewing for additur, the appropriate inquiry is whether the evidence supports the jury's award. *Setterington v Pontiac Gen Hosp*, 223 Mich App 594, 608; 568 NW2d 93 (1997). We will not overturn a verdict if there is an interpretation of the evidence that provides a logical explanation for the jury's findings. *Bean v Directions Unlimited, Inc*, 462 Mich 24, 31; 609 NW2d 567 (2000).

The trial court ruled as a matter of law that plaintiff's reasonable and necessary medical expenses were $120,256.07, so the parties did not present any evidence to the jury about medical expenses. However, plaintiff presented evidence of lost wages and benefits, whereas defendant presented evidence that plaintiff was disabled because of unrelated medical conditions. The trial

court instructed the jury to consider the amount of
reasonable and necessary medical care, treatment,
and services, as well as loss of earning capacity.
However, the jury returned a verdict of only $86,000
for economic loss. We are unable to deduce any logical
reason for this other than jury confusion, because
this sum closely resembles the amount plaintiff
claimed to have lost in wages and benefits, implying
that the jury ignored the established sum of medical
expenses. The evidence does not support the jury's
award. We are loath to engage in fact-finding here, so
we vacate that portion of the jury award relating to
economic damages and remand for a trial limited to
that issue.

Plaintiff also argues that the trial court erred in
refusing to grant additur or a new trial regarding
Sharon Robertson's award of $17,000 for noneconomic
loss. We disagree. Plaintiff merely presents a list of
factors that were given to and considered by the jury.
The evidence rationally supports the award.

In light of our decision to vacate the jury's award of
economic loss and remand for a new trial on that issue,
we see no need to address plaintiff's remaining issues.
We do not retain jurisdiction.

METER, J., concurred.

KELLY, P.J. *(dissenting).* I respectfully dissent. I would
conclude that the trial court erred in denying defen-
dant's motions for summary disposition, directed ver-
dict, and judgment notwithstanding the verdict because
the icy condition of the premises was not "effectively
unavoidable." *Lugo v Ameritech Corp, Inc*, 464 Mich
512, 518; 629 NW2d 384 (2001). Accordingly, I would
reverse.

## I. APPLICABLE LAW

"Generally, a premises possessor owes a duty of care to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 328; 683 NW2d 573 (2004). This duty does not encompass a duty to protect an invitee from known or "open and obvious" dangers unless the premises possessor should anticipate the harm despite the invitee's knowledge of the condition. *Lugo, supra* at 516. The invitor has a duty to take reasonable precautions to protect invitees from an open and obvious danger only "if special aspects of a condition make even an open and obvious risk unreasonably dangerous . . . ." *Id.* at 517.

This Court has repeatedly recognized that the risks of falling on snow or ice are open and obvious. *Corey v Davenport College of Business (On Remand)*, 251 Mich App 1, 5; 649 NW2d 392 (2002); *Joyce v Rubin*, 249 Mich App 231, 239-240; 642 NW2d 360 (2002). Thus, defendant did not have a duty to protect plaintiff from the dangers associated with the ice-covered lot unless there were special aspects of the condition. Special aspects may impose a duty to warn or protect against even an open and obvious condition when evidence creates a genuine issue of material fact whether the condition is "effectively unavoidable" or when special aspects of the condition create "an unreasonably high risk of severe harm." *Lugo, supra* at 518. "[O]nly those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine." *Id.* at 519.

We apply an objective analysis to determine whether evidence of special aspects exists. Our Supreme Court explained in *Mann, supra* at 328-329:

> To determine whether a condition is "open and obvious," or whether there are "special aspects" that render even an "open and obvious" condition "unreasonably dangerous," the fact-finder must utilize an objective standard, i.e., a reasonably prudent person standard. That is, in a premises liability action, the fact-finder must consider the "condition of the premises," not the condition of the plaintiff. [Citations omitted.]

Generally, a special aspect is one that is unusual in character, location, or surrounding conditions. See *Bertrand v Alan Ford, Inc*, 449 Mich 606, 614-617; 537 NW2d 185 (1995). When considering whether a condition has a special aspect, "it is important to maintain the proper perspective, which is to consider the risk posed by the condition *a priori*, that is, before the incident involved in a particular case." *Lugo, supra* at 518 n 2. An open and obvious accumulation of snow and ice, by itself, does not feature any special aspects. See *Mann, supra* at 332-333.

## II. ANALYSIS

As noted by the majority, there is no serious dispute that the parking lot was openly and obviously icy. Yet the majority concludes that the conditions were "effectively unavoidable." I disagree.

Plaintiff erroneously analogizes his fall on the ice with the *Lugo* decision's example of a special aspect that involved "a commercial building with only one exit for the general public where the floor is covered with standing water. While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water." *Id.* at 518. In the *Lugo*

example, the potential plaintiff was *required* to confront an *unexpected* risk. In other words, the plaintiff was already in the fictitious defendant's building and had no alternative but to walk through the water in order to have access to the exit. This example in *Lugo* differs markedly from the facts of this case.

Here, plaintiff was not required to confront an unexpected risk, nor was he "effectively trapped." Plaintiff could have gone to a different service station to make his purchases of fuel, coffee, and windshield washer fluid. Although the majority contends that there was no evidence that any available alternatives existed, the record reveals otherwise. Plaintiff testified that he was aware of other 24-hour service stations around the interstate, some of which were truck stops. Nothing prevented plaintiff from shopping at any of these other stations. Nor was there anything about defendant's premises that forced him to cross the icy premises to reach defendant's store. Plaintiff's desire or need to purchase coffee and washer fluid, compelling as it may have been in plaintiff's opinion, does not affect the legal duties defendant owed to plaintiff. To conclude otherwise impermissibly shifts the focus from an examination of the premises to an examination of the personal circumstances of plaintiff. Plaintiff admitted he was aware of the icy conditions and chose to traverse the area. Under these circumstances, the icy condition of the parking lot was not "effectively unavoidable."

Because plaintiff did not establish a special aspect of the icy lot sufficient to remove it from the application of the open and obvious doctrine, I would reverse.