NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0229n.06

No. 17-2151

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CARLETON BUCK, | ) | **FILED**<br>May 02, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CITY OF HIGHLAND PARK, MICHIGAN; SGT. | ) | COURT FOR THE EASTERN |
| CURTIS WHITE; HEATHER HOLCOMB, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: GILMAN, COOK, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Carleton Buck was shot and injured as a bystander to an ongoing robbery at a pawnshop in the City of Highland Park, Michigan. He sued the City and its two police officers who responded to the silent burglar alarm, alleging a state-law claim of gross negligence against each officer and violations of 42 U.S.C. § 1983 against the City and one of the officers. The district court granted judgment in favor of defendants pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff now appeals. For the reasons that follow, we affirm.

I.

Sergeant Curtis White and his partner, Officer Heather Holcomb, responded to a silent burglar alarm at the Gold Nugget pawnshop on October 10, 2009.[1] Buck coincidentally had

---

[1] Our factual summary is taken exclusively from plaintiff's Second Amended Complaint.

business there that day, and parked behind the officers' squad car just after they arrived on scene. Holcomb was looking into the front window of the pawnshop when Buck got out of his car. As Buck approached the pawnshop, he crossed paths with White on the sidewalk and the two "exchanged greetings."

Holcomb entered the Gold Nugget first, followed by White and then Buck. After White passed through the building's vestibule and into the pawnshop, he turned to the right and was immediately confronted by an escaping armed robber. The robber shot at White, hitting the sergeant in his left arm. Holcomb returned fire, shooting at the robber as he exited the building through the vestibule. As the robber passed "within a few inches" of Buck, who was also attempting to flee through the vestibule, Buck alleges that Holcomb shot him twice in the buttocks.

In August 2012, Buck sued the City, Sergeant White, and a "Jane Doe" police officer in Michigan state court. He alleged that his federal and state substantive due-process rights were violated by the City's failure to train its officers and by certain actions of the defendant officers that increased the risk of danger at the scene. The trial court granted summary disposition in favor of the defendants, and the Michigan Court of Appeals affirmed. *Buck v. City of Highland Park*, No. 12–010985–NO, 2015 WL 4374145, at *1 (Mich. Ct. App. July 16, 2015) (per curiam). The Michigan Supreme Court denied leave to appeal. *Buck v. City of Highland Park*, 876 N.W.2d 524 (Mich. 2016).

Undeterred, Buck returned to the state trial court in August 2016 and a filed a motion to reopen the case and for relief from judgment. The motion was granted, and Buck filed an amended complaint. Defendants filed a second motion for summary disposition, and the parties engaged in discovery. Two months later, the trial court granted Buck's motion to amend his

complaint by adding Holcomb. In his Second Amended Complaint, Buck newly alleged that Holcomb violated his Fourteenth Amendment substantive due-process right to bodily integrity. And he added claims that White and Holcomb's respective conduct was grossly negligent under MCL § 691.1407(2)(c), (8)(a). Buck also renewed his failure-to-train allegations against the City.

Defendants removed this action to federal court and filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure Rule 12(c). The district court granted defendants' motion, and plaintiff timely appeals from that decision.[2]

## II.

As a threshold matter, we note that defendants prematurely filed their Rule 12(c) motion before their answer to the Second Amended Complaint. *See* Fed. R. Civ. P. 12(c). A motion pursuant to Federal Rule of Civil Procedure 12(b) is the typical vehicle for testing a complaint's sufficiency before the pleadings have "closed." *See id.* at 12(b)–(c); *see also Ohio v. United States*, 849 F.3d 313, 318 (6th Cir. 2017). This technical defect is not fatal, however, because we review a district court's grant of either kind of motion de novo, and under the same general standards. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014); *cf.* 5C Wright & Miller, Federal Practice and Procedure § 1368 (3d ed.).

Our precedent instructs that, for a complaint to survive such motions, it must contain "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc*., 732 F.3d 645, 649 (6th Cir. 2013) (citation and internal quotation marks omitted). We construe the record in

---

[2]The district court also dismissed as moot Buck's motion to compel and extend discovery and his motion to file supplemental authority. Buck presents no challenge to these rulings on appeal. To the extent Buck complains about discovery in reply, we decline to address an issue untimely raised. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010).

the light most favorable to the nonmoving party and accept all well-pleaded factual allegations as true. *Id.* But we "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (citation and quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246–47 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted).

With these standards in mind, we turn to the parties' arguments and note that this court may affirm the district court's judgment "on any grounds supported by the record even if different from the reasons of the district court." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002).

III.

Buck alleges that Holcomb violated his constitutional right to bodily integrity when she shot at the armed robber while Buck was "within inches of the fleeing suspect" and thus "plainly and clearly visible" in the officer's "line of fire." The parties dispute whether Buck is alleging a Fourth or Fourteenth Amendment claim, but we adjudicate "constitutional tort claims asserted by persons collaterally injured by police conduct who were not intended targets of an attempted official 'seizure' . . . according to substantive due process norms." *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000).

A.

Holcomb successfully argued before the district court that Buck's constitutional claim against her was time-barred, and renews that defense on appeal.[3] Because Congress did not specifically adopt a statute of limitations governing § 1983 actions, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003). We have held that the appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal-injury claims. MCL § 600.5805(10); *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004). Here, Buck brought his § 1983 claim against Holcomb nearly seven years after the shooting.

Buck urges that this claim can proceed regardless because he added Holcomb as a necessary party, precluding her from asserting any statute of limitations defense.[4] Buck looks to Michigan Supreme Court precedent in support of this contention, and in particular to its recent decision in *Graham v. Foster*, 893 N.W.2d 319 (2017) (mem). In *Graham*, the Court considered

---

[3]The statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim, *see* Fed. R. Civ. P. 8(a) (requiring "a short and plain statement *of the claim*" (emphasis added)); *Jones v. Bock*, 549 U.S. 199, 216 (2007). But when the allegations in the complaint affirmatively show that the claim is time-barred, as is the case here, dismissing the claim under the Rule 12(b)(6) standard is appropriate. *See Jones*, 549 U.S. at 215 ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]").

[4]The Michigan Court Rules define a necessary party as a "person[ ] having such [an] interest[ ] in the subject matter of [the] action that [her] presence in the action is essential to permit the court to render complete relief." MCR 2.205(A). Some panels of the Michigan Court of Appeals have discussed a necessary-party exception that allows the joinder of a necessary party after the statute of limitations has expired. *See, e.g.*, *O'Keefe v. Clark Equip. Co.*, 307 N.W.2d 343, 344 (Mich. Ct. App. 1981) (per curiam) (discussing but declining to apply the exception because to do so "would prevent the operation of the statute of limitations even though the plaintiff was not diligent in bringing his suit").

whether the presumed father of a minor child could be added to a paternity suit as a necessary party after the applicable statute of limitations for asserting such a claim had passed. *Id.* at 320.

*Graham* does not help Buck. Although the Court "le[ft] undisturbed the Court of Appeals' determination that [the presumed father] constitute[d] a necessary party," it made clear that the presumed father could still raise a statute of limitations defense once he was added to the dispute. *Id.* at 321–22. Notably, the Court acknowledged and also left undisturbed its prior holding in *Miller v. Chapman Contracting*, 730 N.W.2d 462, 464 (Mich. 2007) (per curiam), that the relation-back doctrine for amended pleadings did not apply to the addition of new parties.[5] *Graham*, 893 N.W.2d. at 321. And it expressly vacated "the portion of the Court of Appeals' decision concerning the relation-back doctrine" and a "supposed necessary-party exception" to the statute of limitations "of the sort presumed by the Court of Appeals." *See id.* at 321–22, 322 n.4.

Here, Holcomb has raised a statute-of-limitations defense, and Buck makes no argument that she did so improperly under any federal caselaw or procedural rule.[6] As to the merits of the district court's conclusion that the defense bars Buck's claim, Buck merely states without exposition that he "relies on the necessary party exception to the statute of limitations." Yet even assuming this exception exists, Buck cites no case in which a court has successfully applied it under Michigan law to prevent the operation of an otherwise-applicable statute-of-limitations

---

[5]The *Miller* Court was referring to MCR 2.118(D), which provides that "[a]n amendment that adds a claim or a defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading." *See Miller*, 730 N.W.2d at 464.

[6]Instead, Buck argues that defendants White and the City "could have opposed the amendment of the complaint to add Holcomb" in state court by arguing that the statute of limitations had expired. Because they did not, contends Buck, Holcomb's statute of limitations defense "was waived." But Michigan's "statute of limitations defense is personal to the party raising it," so only Holcomb can assert it on her own behalf, and only she can forfeit or waive it. *See Graham*, 893 N.W.2d at 321–22.

defense. *See id.* at 320 n.1 (explaining that a necessary-party exception had been discussed in previous Court of Appeals decisions, but never applied); *see also id.* at 322 (vacating the portion of the lone Court of Appeals opinion that presumed and applied the exception). And Buck develops no argument explaining why we should break ranks in this case. Without more, we have no reason to disturb the district court's ruling on this issue.

B.

Even if Buck's § 1983 claim against Holcomb is not time-barred, he has not alleged sufficient facts to give rise to a plausible claim that the officer's conduct violated his constitutional right to bodily integrity. An officer's conduct denies an innocent third party fundamental substantive due process only when it "shocks the conscience." *Claybrook*, 199 F.3d at 359. And where, as here, an officer had no "opportunity to ponder or debate [her] reaction to the dangerous actions of [an] armed man," we ask whether she used force "maliciously and sadistically for the very purpose of causing harm." *Id.* at 359–60; *see also Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir. 2003).

Buck pleads no facts in his Second Amended Complaint from which we can reasonably infer such an egregious intent to harm. At most, Buck alleges (in a conclusory statement) that Holcomb's conduct was "deliberately indifferent," but that less-stringent test of conscience-shocking behavior controls when an officer is "afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action." *Claybrook*, 199 F.3d at 359. Buck does not allege that Holcomb enjoyed any such luxury here. Instead, he describes a fluid and dangerous situation requiring split-second decision-making: Holcomb was attempting to prevent the armed perpetrator, who had just shot her partner, from escaping out into the community

through the vestibule Buck had just walked into. Accordingly, the malicious-and-sadistic standard applies. *See id.* at 359–60.

Buck faults Holcomb for shooting at the armed and fleeing suspect as that suspect came "within inches" of him. But even if Holcomb's actions "violated departmental policy or were otherwise negligent," Buck does not contend that she "acted with conscience-shocking *malice* or *sadism* towards" him. *Id.* at 360; *cf. Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). Nor do Buck's allegations suggest that Holcomb shot him "for the very purpose of causing [him] harm." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Buck's allegations against Holcomb, taken in the light most favorable to him, are thus insufficient to give rise to any plausible inference that her conduct was violative of an innocent bystander's substantive due-process rights under the malicious-and-sadistic test. Accordingly, the district court properly dismissed Count III.

IV.

On a related point, Buck would hold the City to account for failure to train on a theory of single-incident liability as contemplated in *City of Canton v. Harris*, 489 U.S. 378 (1989), and *Connick v. Thompson*, 563 U.S. 51 (2011). There are indeed "limited circumstances in which an allegation of a 'failure to train' can be the basis for [municipal] liability under § 1983." *Harris*, 489 U.S. at 387. And the United States Supreme Court has not "foreclose[d] the possibility, however rare . . . [,] that a city could be liable under § 1983 without proof of a pre-existing pattern of [constitutional] violations." *Connick*, 563 U.S. at 64.

But a prerequisite to establishing liability under § 1983 for failure to train is that a constitutional violation has occurred. *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th

Cir. 2001). As discussed above, Buck pleads no plausible constitutional violation. Therefore his related § 1983 claim against the City necessarily fails. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *see also Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004). At bottom, "[n]o constitutional violation means no municipal liability." *Thomas v. City of Columbus*, 854 F.3d 361, 367 (6th Cir. 2017). The district court therefore properly dismissed Count II.

V.

Buck's state-law claims of gross negligence fare no better.[7] Michigan's governmental tort liability act, MCL §§ 691.1401 *et seq.*, provides governmental employees with immunity from tort liability for injuries they cause during the course of their employment so long as the employee's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." MCL § 691.1407(2)(c); *see also id.* at § 691.1407(8)(a) (defining "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results").

A.

Regarding White, Buck alleges that he was the proximate cause of Buck's injury because he did not caution Buck to stay outside before following his partner into the pawnshop. The parties debate causation on appeal, and the district court focused on this issue below, but we need

---

[7]Buck also argues that the district court abused its discretion in exercising supplemental jurisdiction over his state-law claims after it dismissed his federal claims. *See* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it ha[d] original jurisdiction"). Because Buck did not raise this issue in the district court, it is not properly before us, and we decline to review it. *See United States v. Ninety–Three Firearms*, 330 F.3d 414, 424 (6th Cir. 2003) (noting that an argument raised for the first time on appeal will not be considered unless a plain miscarriage of justice will result); *see also Smith v. Cty. of Lenawee*, 600 F.3d 686, 690 n.3 (6th Cir. 2010) (declining to review argument raised only on appeal that a district court inappropriately exercised supplemental jurisdiction over state-law claims).

look only to Michigan's public-duty doctrine, which "insulates officers from tort liability for the negligent failure to provide police protection unless an individual plaintiff satisfies the special-relationship exception." *White v. Beasley*, 552 N.W.2d 1, 3 (Mich. 1996).

We cannot plausibly infer from the factual allegations in the Second Amended Complaint that any such relationship existed between Buck and White. The special-relationship test requires: (1) that the police officer assume, through promises or actions, an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the officer that his inaction could lead to harm; (3) some direct contact between that party and the officer; and (4) that party's justifiable reliance on the officer for protection. *Id.* at 5.

Here, the only contact alleged between White and Buck is that the two "exchanged greetings" on the sidewalk outside the Gold Nugget before White entered the building. Although White was aware that a silent burglar alarm had been triggered inside the pawnshop, there is no allegation of him knowing that Buck, who entered the Gold Nugget after White, was on his way to do business there. Moreover, merely exchanging greetings, although an example of direct contact, lacks specificity and "cannot reasonably be construed as a promise to protect" Buck from any third-party criminals. *Smith v. Jones*, 632 N.W.2d 509, 515 (Mich. Ct. App. 2001). Nor can such nebulous greetings "reasonably be construed as invoking [Buck's] reliance on [White] for protection." *Id.* at 516.

"Duty is an essential element of a claim of negligence or gross negligence." *Id.* at 514. Buck alleges that White failed to protect him, but we cannot plausibly infer from the Second Amended Complaint that White had assumed an affirmative duty to do so. Accordingly, the district court properly dismissed Count I.

B.

Regarding Holcomb, the district court dismissed Buck's gross-negligence claim against her as time-barred. Pursuant to MCL § 600.5805(10), "the period of limitations is 3 years after the time of the death or injury . . . to recover damages for the death of a person, or for injury to a person or property."[8] As discussed above, Buck gives no valid reason why Holcomb cannot assert a statute-of-limitations defense. Nor does Buck explain why the necessary-party exception should apply to prevent the operation of Holcomb's defense to his gross-negligence claim asserted seven years after the shooting. Buck thus gives us no cause to disturb the district court's dismissal of Count III.

VI.

For these reasons, we affirm the district court's judgment.

---

[8] The district court applied Michigan's two-year statute of limitations "for an action against a sheriff charging misconduct or neglect of office by the sheriff or the sheriff's deputies." MCL § 600.5805(7). Although Holcomb is a police officer for the City and not a sheriff's deputy, any district court error was harmless because, on the face of the Second Amended Complaint, Buck's claim would be time-barred under either the two- or three-year statute of limitations.