JIMKOSKI v SHUPE

Docket No. 279580. Submitted December 3, 2008, at Grand Rapids. Decided December 23, 2008, at 9:00 a.m.

Carey Jimkoski, as personal representative of the estate of Nicholas P. Jimkoski, deceased, brought an action in the Huron Circuit Court against Peter L. Shupe, Thomas Shupe, and Bernice Shupe. Nicholas Jimkoski was killed when a large bale of straw fell from a stack and struck him after he had helped Peter Shupe load bales onto a wagon. Following a jury trial, the court, M. Richard Knoblock, J., entered a judgment in the plaintiff's favor. Peter Shupe appealed.

The Court of Appeals *held*:

1. The trial court did not err by denying Shupe's motion for summary disposition based on the open and obvious danger doctrine. While a possessor of land ordinarily does not have a duty to remove open and obvious dangers on the premises, the possessor still owes a duty of care to an invitee if special aspects of the condition render the hazard effectively unavoidable or unreasonably dangerous. A genuine issue of material fact existed regarding whether there were special aspects that precluded applying the open and obvious danger doctrine to the situation of an extremely heavy bale hanging high in the air.

2. The fact that Nicholas Jimkoski may also have been negligent did not bar the cause of action. The jury's special verdict allocated 40 percent of the negligence giving rise to the accident to Jimkoski and reduced the damages recoverable from Shupe accordingly.

3. The jury's verdict was properly based on a premises-liability theory, the jury having found that special aspects made the open and obvious danger unreasonably dangerous. Any error related to instructing the jury on the theory of ordinary negligence did nothing to affect the outcome of the trial and does not require reversal.

4. The collateral source rule, found in MCL 600.6303, requires that an award of future economic damages be offset by social security benefits. The trial court, however, did not err by refusing to reduce the award for possible future cost of living increases in

those benefits. Those increases are not certain and are not a previously existing statutory obligation necessitating reduction of the award under MCL 600.6303(5).

Affirmed.

DAMAGES — FUTURE ECONOMIC DAMAGES — REDUCTION OF DAMAGES AWARD — SOCIAL SECURITY BENEFITS — COST OF LIVING INCREASES.

The collateral source rule requires that an award of future economic damages be offset by social security benefits, but need not be reduced for possible future cost of living increases in social security benefits (MCL 600.6303[1], [4], and [5]).

*Gordon & Gordon, P.C.* (by *Arnold M. Gordon*), for Carey Jimkoski.

*Jonathon Shove Damon* for Peter Shupe.

Before: HOEKSTRA, P.J., and BANDSTRA and DONOFRIO, JJ.

BANDSTRA, J. Peter Shupe (defendant) appeals as of right the judgment entered in plaintiff's favor following a jury trial. Defendant also challenges the trial court's decision to deny defendant's motions for summary disposition and a directed verdict. We conclude that the trial court did not err in determining that the factual record would support a conclusion by the fact-finder that, even if the danger resulting in plaintiff's injuries was open and obvious, special aspects existed that justified imposing liability on defendant under a premises-liability theory. Because of that conclusion and the imposition of liability under that theory that was a sufficient basis for the verdict, we need not consider defendant's claim that the jury was erroneously permitted to find him liable under a negligence theory. Further, we conclude that there was no error in failing to include possible future cost of living increases in social security benefits as a collateral source that would reduce plaintiff's damages. We affirm.

STATEMENT OF FACTS

Defendant is a farmer. His farming operation includes selling bales of straw, weighing approximately 700 pounds, that are stored in stacks, with the top bales being approximately 11 feet off the ground. Plaintiff's[1] father placed an order for several bales of straw from defendant. On a cold and blustery winter day, defendant began loading the bales of straw onto plaintiff's wagon, using a loader tractor to transfer the straw bales from the stack. At some point during the loading process, plaintiff, whom defendant described as a good friend, stopped by to see how the job was progressing.

Defendant had nearly completed loading the wagon when he encountered a problem. When defendant attempted to pull a three-bale group from the top of the stack, instead of all three bales lifting, as was normal, only the two lower bales came off the stack; the topmost bale remained attached to the stack, apparently frozen in place. Defendant, who had experience with thousands of bales, had never seen this happen before.

Defendant finished loading the wagon using the two bales that had come off the stack, as well as the additional bales that had been stacked below them. He then attempted to dislodge the hanging bale using the loader tractor, nudging it four or five times, but the bale remained frozen in place. After the unsuccessful attempt to knock down the frozen bale, defendant left it hanging there and, with plaintiff's assistance, secured the bales that had been loaded onto plaintiff's wagon. At some point after the load was secured, the frozen bale fell from the stack and struck plaintiff. Because of his injuries from the accident, plaintiff died and this

---

[1] For ease of reference, we will refer to plaintiff's decedent, Nicholas Jimkoski, as plaintiff for purposes of this opinion.

suit followed. Additional facts will be provided as necessary to explain our decision.

ANALYSIS

### I. PREMISES LIABILITY—OPEN AND OBVIOUS DANGER DOCTRINE

Defendant argues that the trial court should have granted his motion for summary disposition based on the open and obvious danger doctrine.[2] We disagree.

Because this issue was raised in the trial court, it is preserved for review. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). We review de novo the decision of the trial court on the motion for summary disposition. *Associated Builders & Contractors v Dep't of Consumer & Industry Services Director*, 472 Mich 117, 123; 693 NW2d 374 (2005).

Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence submitted by the parties, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 164; 645 NW2d 643 (2002). A question of material fact exists when the record leaves open an issue on which reasonable minds

---

[2] Defendant also argues that the trial court erred by denying his motion for a directed verdict. However, as we conclude below was the case with regard to the motion for summary disposition, questions of material fact remained after trial whether a special aspect was present. The evidence presented at trial was essentially the same as the evidence presented in support of the motion for summary disposition and did not resolve the outstanding questions of fact. A directed verdict is only appropriate when there is no factual dispute on which reasonable jurors could disagree. *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427-428; 711 NW2d 421 (2006). Since factual disputes on which reasonable jurors could disagree were present, the trial court did not err in denying defendant's motion for a directed verdict.

might differ. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court is liberal in finding genuine issues of material fact. *Lash v Allstate Ins Co*, 210 Mich App 98, 101; 532 NW2d 869 (1995).

A possessor of land owes an invitee a duty to exercise reasonable care to protect the invitee from unreasonable risks of harm caused by dangerous conditions on the premises. *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). This duty does not ordinarily extend to the removal of open and obvious dangers. *Id*. In determining whether a condition presents an open and obvious danger, an objective test is used to establish whether an average person with ordinary intelligence would have discovered the danger upon casual inspection. *Novotney v Burger King Corp (On Remand)*, 198 Mich App 470, 474-475; 499 NW2d 379 (1993). Even if a condition is open and obvious, however, a possessor of premises still owes a duty of care to an invitee if "special aspects" of the condition render the hazard effectively unavoidable or unreasonably dangerous. *Robertson v Blue Water Oil Co*, 268 Mich App 588, 592-593; 708 NW2d 749 (2005).

At issue with respect to defendant's motion for summary disposition is his contention that no special aspects existed that would preclude application of the open and obvious danger defense. Defendant had also argued with respect to the motion that there was no genuine issue of material fact regarding the predicate determination that the hanging straw bale was an open and obvious danger. However, even had the trial court agreed with defendant with respect to that issue, defendant's motion for summary disposition would properly have been denied because, as we explain below, a genuine issue of material fact existed regarding whether special aspects existed that precluded applying the open and obvious danger defense.

Further, as we also explain below, the jury in this case agreed with defendant that the hanging straw bale was open and obvious and only imposed liability on defendant because it found that special aspects existed. For these reasons, defendant was not prejudiced by the trial court's determination that a genuine issue of material fact existed with respect to whether the hanging bale was an open and obvious danger, and we need not further consider that question.

We conclude that the trial court did not err by concluding that a genuine issue of material fact existed concerning whether the hanging bale presented special aspects that "[gave] rise to a uniquely high likelihood of harm or severity of harm if the risk [was] not avoided . . . ." *Lugo*, 464 Mich at 519. The straw bale that killed plaintiff was extremely heavy and hanging high in the air in a position where, if it became dislodged, it would fall with sufficient speed to cause significant damage. Defendant admitted that, having unsuccessfully attempted to dislodge the bale, he believed that it would not continue to hang suspended that way indefinitely. Given the inevitability of the bale's collapse, its height, and its weight, the factfinder could reasonably have concluded that it constituted a special aspect because of the "severity of harm" it could foreseeably cause if not avoided. *Id*.

Further, there was evidence upon which the factfinder could reasonably have concluded that the hanging bale presented a "high likelihood of harm," even beyond the facts of its weight and precariously hanging position. *Id*. Before the accident, plaintiff and defendant had apparently moved out of the zone of danger presented by the hanging bale to work together securing the straw that had been loaded on plaintiff's wagon. Nonetheless, for some reason, plaintiff moved back near the stacked straw, where he was killed. Similarly, defen-

dant stated, both in answer to interrogatories and at his deposition, that he was himself almost struck by the falling straw bale, thus indicating that he too had returned to the dangerous area. Further, according to a state police investigator, defendant stated that, after the trailer was loaded, it was cold and he and plaintiff got in the corner behind the bales to get out of the wind. The fact-finder could reasonably have concluded that, because the hanging bale presented a danger in an area where plaintiff might likely seek shelter from the wind, it presented a high likelihood of harm notwithstanding its open and obvious nature.

We recognize that the evidence could lead a reasonable fact-finder to conclude that plaintiff and defendant were both equally aware of and knowledgeable about the danger presented by the hanging bale. Nonetheless, as the owner of the premises on which that danger was located, defendant had a legal obligation to protect plaintiff, his invitee, because of the special aspects presented by that dangerous condition. In light of that, the fact that plaintiff here may also have been negligent does not bar a cause of action, as explained in *Lugo*:

> Under comparative negligence, where both the plaintiff and the defendant are culpable of negligence with regard to the plaintiff's injury, this reduces the amount of damages the plaintiff may recover but does not preclude recovery altogether. . . .
>
> Accordingly, it is important for courts in deciding summary disposition motions by premises possessors in "open and obvious" cases to focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff. [*Lugo*, 464 Mich at 523-524.]

Consistent with these principles, the jury's special verdict in this case allocated 40 percent of the negligence giving rise to the accident to plaintiff and reduced

the damages recoverable from defendant accordingly; plaintiff's negligence was not a complete bar to this action.

Finally, defendant's argument that there were no special aspects related to the dangerous condition presented by the hanging bale because it was avoidable is without merit. In *Lugo*, one hypothetical "special aspect" provided to illustrate the analysis was an unguarded 30-foot-deep pit, which the Court acknowledged would be easily avoidable. *Id.* at 518. However, the *Lugo* Court reasoned that the substantial risk of severe injury or death associated with such a condition would make it unreasonably dangerous to maintain even if it was avoidable. *Id.* As explained above, that was also the case here. The trial court did not err by denying defendant summary disposition under the open and obvious danger doctrine.[3]

## II. NEGLIGENCE THEORY

Defendant argues that the trial court erred by providing a jury instruction and questions on the special

---

[3] Defendant also contends that he was entitled to summary disposition under the "known risk" doctrine, i.e., that plaintiff's claim should fail as a matter of law because he was aware of the risk that the hanging bale presented. However, defendant only relies on caselaw predating *Lugo*, and his cursory treatment of this theory does nothing to explain how a rule preventing plaintiff from recovery if he knew of the risk can coincide with the imposition of liability we have concluded was appropriate under the *Lugo* analysis. Moreover, finally, defendant's argument here seems closely akin to an argument that plaintiff's claim should be barred because of contributory negligence. The doctrine of contributory negligence has been abandoned in Michigan and replaced with a rule of comparative fault. *Placek v Sterling Hts*, 405 Mich 638, 650; 275 NW2d 511 (1979). The extent of a plaintiff's comparative fault, if any, is generally a question for the jury, *Rodriguez v Solar of Michigan, Inc*, 191 Mich App 483, 488; 478 NW2d 914 (1991), and, as we have already noted, the jury allocated substantial fault to plaintiff in rendering its verdict. In any event, considering these significant questions and defendant's terse assertion of this argument, we do not consider it properly preserved for our review.

verdict form relating to ordinary negligence because plaintiff's claim should have been limited to a premises-liability theory. Defendant asserts that plaintiff's injuries resulted solely from a condition on the land. He argues that the loading operation, during which any active negligence might have occurred, was completed before decedent was struck by the bale of straw. Regardless of the merits of that argument, we conclude that defendant was not prejudiced because the verdict was, in any event, properly based on a theory of premises liability.

To preserve an instructional error for review, a defendant must object to the instruction before the jury deliberates. MCR 2.516(C); *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). Defendant did so here. We review de novo preserved claims of instructional error. *Rose v State Farm Mut Automobile Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2007). MCR 2.613(A) provides that a verdict should not be set aside unless failure to do so would be inconsistent with substantial justice. Reversal is not warranted when an instructional error does not affect the outcome of the trial. *Ward v Consolidated Rail Corp*, 472 Mich 77, 84; 693 NW2d 366 (2005); *McClaine v Alger*, 150 Mich App 306, 317; 388 NW2d 349 (1986).

The court provided the jury with a special verdict form, which included the following questions:

1. Was Peter Shupe negligent?

2. Was Peter Shupe's negligence a proximate cause of the injury to Nicholas Jimkoski?

3. Was the bale of straw which fell on Nicholas Jimkoski a dangerous condition on the premises?

4. Did Peter Shupe know of, or by the exercise of reasonable care should he have discovered, the condition,

and should he have realized that the condition involved an unreasonable risk of harm to Nicholas Jimkoski?

5. Should Peter Shupe have expected that Nicholas Jimkoski would not discover or realize the danger, or would fail to protect himself against it?

6. Was the condition open and obvious?

7. Was the condition known to Nicholas Jimkoski?

8. Was there a special aspect to the condition?

9. Did Peter Shupe fail to exercise reasonable care to protect Nicholas Jimkoski against the danger?

The jury answered yes to questions 1 to 4, no to question 5, and yes to questions 6 to 9. Therefore, with respect to premises liability (questions 3 to 9), the jury found that, even though the bale was an open and obvious danger, special aspects were present that made it unreasonably dangerous.[4]

As we have previously explained, there was nothing wrong with allowing the jury to make those determinations because there was sufficient factual support for them in the record. Further, the imposition of liability on defendant under the premises-liability theory was a

---

[4] We reject defendant's contention that, because the jury determined, in response to question 5, that defendant should have expected that plaintiff would discover or realize the danger posed by the hanging bale and protect himself against it, no premises liability may be imposed. Defendant's reliance on *Prebenda v Tartaglia*, 245 Mich App 168; 627 NW2d 610 (2001), in this regard is misplaced. *Prebenda*'s recitation of the elements of a cause of action by which an invitee may impose premises liability on a possessor of land was stated in the most general of terms, *id.* at 169, because that was all that was necessary to support the holding of the case, that there was simply no dangerous condition whatsoever under the facts presented, *id.* at 170. *Prebenda* specifically did "not consider the intricacies of the open and obvious [danger] doctrine" in that context. *Id.* Most notably, *Prebenda* did not consider, and does nothing to undermine, the *Lugo* rule that, even if a defendant reasonably expects that a plaintiff will discover or realize a danger and protect against it, liability may be imposed if that danger presents a special aspect.

sufficient ground for the verdict. Hence, even if the jury had not been instructed on the theory of ordinary negligence and the contested questions had been excluded from the special verdict form, the jury would have found in plaintiff's favor. Therefore, any error related to the challenged jury instructions and questions on the special verdict form did nothing to affect the outcome of the trial and does not require reversal.

### III. OFFSET FOR SOCIAL SECURITY BENEFIT INCREASES

The parties agree that Michigan's collateral-source rule requires that an award of future economic damages be offset by social security benefits. Defendant contends that the offset should include cost of living increases to those benefits. We disagree.

Defendant argued at a motion following trial that future cost of living increases in social security benefits should be used to offset the damages award; thus, this issue is preserved. *Peterman,* 446 Mich at 183. Issues of statutory interpretation are questions of law and are reviewed de novo. *Apsey v Mem Hosp,* 477 Mich 120, 127; 730 NW2d 695 (2007).

When construing the provisions of a statute, the primary task is to discern and give effect to the intent of the Legislature. *Sun Valley Foods Co v Ward,* 460 Mich 230, 236; 596 NW2d 119 (1999). If the language in the statute is clear and unambiguous, the plain meaning of the statute reflects the legislative intent, and judicial construction is not permitted. *Tryc v Michigan Veterans' Facility,* 451 Mich 129, 135; 545 NW2d 642 (1996); *Amerisure Ins Co v Auto-Owners Ins Co,* 262 Mich App 10, 14; 684 NW2d 391 (2004).

MCL 600.6303, in pertinent part, sets forth the circumstances under which a jury award is to be set off by a collateral-source payment:

(1) In a personal injury action in which the plaintiff seeks to recover for the expense of medical care, rehabilitation services, loss of earnings, loss of earning capacity, or other economic loss, evidence to establish that the expense or loss was paid or is payable, in whole or in part, by a collateral source shall be admissible to the court in which the action was brought after a verdict for the plaintiff and before a judgment is entered on the verdict. Subject to subsection (5), if the court determines that all or part of the plaintiff's expense or loss has been paid or is payable by a collateral source, the court shall reduce that portion of the judgment which represents damages paid or payable by a collateral source by an amount equal to the sum determined pursuant to subsection (2). . . .

\* \* \*

(5) For purposes of this section, benefits from a collateral source shall not be considered payable or receivable unless the court makes a determination that there is a previously existing contractual or statutory obligation on the part of the collateral source to pay the benefits.

Social security benefits are specifically identified as collateral-source payments, MCL 600.6303(4), and should be used to reduce the jury verdict pursuant to MCL 600.6303(1). *Haberkorn v Chrysler Corp*, 210 Mich App 354, 375; 533 NW2d 373 (1995). However, as with any collateral-source payment, social security benefits may not be used to reduce a judgment unless there is "a previously existing . . . statutory obligation" to pay the benefits. MCL 600.6303(5). Cost of living adjustments in future Social Security benefits, even though likely, are not certain to occur, and the rate of inflation, which controls the amount of any increase, is impossible to predict without rank speculation. Certainly, at the time a judgment might be reduced under the collateral-source statute, future social security adjustments are not a "previously existing . . . statutory obligation." The

trial court did not err by refusing to reduce the award of future economic damages on the basis of a speculative determination regarding possible future cost of living increases in social security benefits.

We affirm. Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219.