*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF MARI ZIMMERMAN-THOMPSON, by SPERRY L. MEGERIAN, Personal Representative,

        Plaintiff-Appellee,

v

UNITED SERVICES AUTOMOBILE ASSOCIATION,

        Defendant-Appellant.

UNPUBLISHED
April 18, 2019

No. 336483
Bay Circuit Court
LC No. 15-003782-CK

Before: SWARTZLE, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this no-fault insurance matter, defendant, United Services Automobile Association, appeals as on leave granted[1] the trial court's order denying its motion for summary disposition under MCR 2.116(C)(10). We reverse in part, affirm in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Mari Zimmerman-Thompson and her husband, Christopher Thompson,[2] were both killed in an automobile accident on July 2, 2015. Christopher was a named insured under an automobile insurance policy (the Policy) and an umbrella policy (the Umbrella) issued by defendant. Although Christopher was the named insured, he and Mari were both listed as operators of the covered motor vehicles. Both policies contained exclusion provisions. Plaintiff, Sperry L. Megerian as the Personal Representative of the Estate of Mari Zimmerman-Thompson

---

[1] *Megerian v United Servs Auto Ass'n*, 501 Mich 1034; 908 NW2d 905 (2018).

[2] For ease of reading, we will refer to Mari Zimmerman-Thompson and Christopher Thompson by their first names.

(the Estate), commenced the instant action when defendant, invoking the contractual exclusion provisions, refused to provide liability coverage to the estate.

Very generally, the Policy excluded coverage for bodily injury to a relative who "resides primarily" in the covered person's household; and the Umbrella excluded coverage for injury sustained by an "insured," which was defined to include a family member who was a "resident" of the insured's household. Plaintiff asserted that Mari was not subject to these exclusions because she did not primarily reside within Christopher's household. The evidence presented in the trial court indicated that Mari and Christopher, who had each been married previously, continued to own separate houses. Mari owned a house located on Stoneham Road ("the Stoneham house"), and Christopher owned a house on Gleaner Road ("the Gleaner house"). Plaintiff alleged that Mari resided primarily in the Stoneham house, rather than the Gleaner house, so she was not excluded from coverage under the Policy and the Umbrella.

After several months of discovery, centered around Mari's residential status, the parties filed competing motions for summary disposition under MCR 2.116(C)(10). The trial court denied both motions, concluding that the contractual language was ambiguous and holding that the issue of coverage was a matter for the trier of fact to decide. On appeal, defendant asserts that the trial court erroneously denied its motion for summary disposition because (1) the contractual terms were not ambiguous and should have been interpreted by the trial court, and (2) there was no genuine issue of material fact regarding whether Mari resided primarily with Christopher in his household.

## II. STANDARD OF REVIEW AND LEGAL PRINCIPLES

"This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as questions of statutory interpretation and the construction and application of court rules." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010) (citations omitted). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The courts are not permitted to make findings of fact or assessments of credibility when deciding a motion for summary disposition. *Price v Kroger Co of Mich*, 284 Mich App 496, 500; 773 NW2d 739 (2009); *Lima Twp v Bateson*, 302 Mich App 483, 492; 838 NW2d 898 (2013). Summary disposition may not be granted if "the record leaves open an issue on which reasonable minds could differ." *Price*, 284 Mich App at 500. "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008). However, this Court will not reverse the trial court if it reaches the correct result for a wrong reason. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 508-509; 741 NW2d 539 (2007).

This Court reviews de novo as a question of law the proper interpretation of a contract, including a trial court's determination whether contract language is ambiguous. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003); see also *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). "[I]n reviewing an insurance policy dispute we must look to the language of the insurance policy and interpret the terms therein in

accordance with Michigan's well-established principles of contract construction." *Henderson v State Farm Fire and Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). If a contract provides definitions for any of its terms, we must apply those definitions, but otherwise the words in a contract are accorded their commonly used meanings. *Cavalier Mfg Co v Employers Ins of Wausau (On Remand)*, 222 Mich App 89, 94; 564 NW2d 68 (1997). We may consult a dictionary to determine "the plain and ordinary meaning of" any undefined terms. *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527-528; 791 NW2d 724 (2010).

We may only find a contract ambiguous if "it allows two or more reasonable interpretations, or if the provisions cannot be reconciled with each other," even if the language is "inartfully worded or clumsily arranged." *Woodington v Shokoohi*, 288 Mich App 352, 374; 792 NW2d 63 (2010). If a contract is ambiguous, its meaning must be determined by the trier of fact. *Klapp*, 468 Mich at 469. However, "if contractual language is clear, construction of the contract is a question of law for the court." *Holmes v Holmes*, 281 Mich App 575, 594; 760 NW2d 300 (2008) (quotation omitted). An unambiguous contract "reflects the parties' intent as a matter of law" and must be enforced as written. *Holland*, 287 Mich App at 527.

## III. RELEVANT CONTRACTUAL TERMS

As noted, Christopher was the named insured on the Policy, and both Christopher and Mari were listed as operators of the motor vehicles. The Policy provided definitions of the terms "you" and "your" as follows:

"You" and "your" refer to the "named insured" shown on the Declarations and spouse if a resident of the same household.

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of the policy, the spouse will be considered you and your under this policy but only until the earlier of:

1. The effective date of another policy listing the spouse as the named insured; or

2. The end of the policy period.

The Policy also defined the term "covered person" as "You or any family member." It defined the term "family member" as "a person related to you by blood, marriage or adoption who resides primarily in your household." The Policy provided liability coverage for compensatory damages for bodily injury for which any "covered person" becomes legally liable because of an auto accident. Finally, the Policy excluded liability coverage for any "covered person" for bodily injury that occurred "to a relative who resides primarily in that covered person's household."

The Umbrella is an entirely separate policy, and thus any definitions in the Policy are inapplicable to terms in the Umbrella, and vice versa. Christopher was again listed as the named insured in the Umbrella. In contrast to the Policy, the Umbrella defined the terms "you" and "your" as follows:

"You" and "your" refer to the "named insured" shown on the Declarations and spouse. The spouse must be a resident of the same household. The spouse is considered to be a resident of the household when there is a legitimate marital covenant, shared economic and non-economic burdens, and legitimate reasons for the spouse to be staying in another home or location.

The Umbrella defined the term "insured" to mean "You and any family member." The term "family member" was, in turn, defined to mean "a person related to you by blood, marriage, or adoption who is a resident of your household." Finally, the Umbrella excluded coverage for "bodily injury or personal injury" that is "[s]ustained by any insured."

## IV. AMBIGUITY

The trial court determined that the relevant contractual provisions of both the Policy and the Umbrella were ambiguous because, as it accurately observed, neither contract defines the phrase "resides primarily," nor do they define related terms like "resident" or "reside." However, a contract is not ambiguous merely because it does not provide its own definition for a relevant term, even if that term may be defined differently by different dictionaries. *Henderson*, 460 Mich at 354-355, 355 n 4. We conclude that the contracts are unambiguous based on the common, everyday meaning of the relevant words.

According to *Merriam-Webster's Collegiate Dictionary* the term "resident" means "living in a place for some length of time" and "one who resides in a place"; it defines the term "reside" to mean "remain, abide," "to dwell permanently or continuously," and "to occupy a place as one's legal domicile." *Merriam-Webster's Collegiate Dictionary* (11th ed). Living somewhere connotes more than merely staying somewhere. Residence therefore unambiguously requires more than mere physical presence. The word "primarily" means "for the most part" or "chiefly." *Merriam-Webster's Collegiate Dictionary* (11th ed). In turn, "for the most part" or "chiefly" connote something more than merely a bare majority. Combining the above definition of "reside" with the definition of "primarily," the phrase "resides primarily" therefore clearly means to live, rather than merely stay, in a place for significantly more time than that person lives anywhere else. Accordingly, it is unambiguous that the relevant Policy exclusion applies to relatives of the named insured who spend the significant majority of their time living in the same household as the named insured.

Similarly, the language of the Umbrella is also unambiguous. Christopher was the named insured listed on the declarations section of the Umbrella. The policy defined the term "you" to include both the "named insured" and spouse who is a "resident of the same household." The policy also defined the term "family member" to mean "a person related to you by blood, marriage, or adoption, who is a resident of your household." Notably, the Umbrella does *not* use the word "primarily," and it explicitly contemplates a spouse having "legitimate reasons for . . . staying in another home or location." We conclude that the term "resident" used in the Umbrella is unambiguous, applying the common and everyday meanings of that word. The Umbrella's exclusion clearly applied to any of Christopher's family members, including his spouse, who lived, beyond merely staying, in his household for any meaningful length of time. Nothing about this language is open to conflicting interpretations. See *Klapp*, 468 Mich at 467.

-4-

## V.  QUESTION OF FACT: UMBRELLA

It is not seriously disputable on this record that Mari was the spouse of Christopher; that Mari lived in the same house as Christopher for a non-trivial percentage of her time; and when Mari stayed elsewhere, she had "legitimate reasons" for doing so.  Mari clearly did not merely stay in Christopher's house.  The Umbrella plainly excludes relevant coverage for "any insured."  The Umbrella defines an "insured" as "You and any family member."  Pursuant to the plain and unambiguous terms of the Umbrella, Mari would constitute an "insured" under *both* the definition of "you" *and* the definition of "family member" by virtue of being a spouse who resided in the same household as Christopher.  Accordingly, defendant was entitled to judgment as a matter of law regarding its liability under the Umbrella.

## VI.  QUESTION OF FACT: POLICY

In contrast, we find a genuine question of fact regarding defendant's liability under the Policy.  As noted, for the exclusion in the Policy to apply to Mari, she must reside for more than merely a bare majority of her time in Christopher's household.  The record clearly reflects that Mari and Christopher enjoyed a marriage of love and affection where the two spouses traveled together, entertained together, and lived together.  As discussed, the record indicates that Mari resided in Christopher's house for some time.  However, we find the considerable testimony from Mari's and Christopher's friends, acquaintances, and family members, conflicting as to whether Mari resided *primarily* at Gleaner house (Christopher's house) or at Stoneham house (Mari's house).

Some witnesses testified that Mari clearly lived at the Gleaner house, while others testified that she spent several days each week visiting Stoneham, often staying overnight.  Similarly, some witnesses testified that Mari's intent was to reside at the Gleaner house, while other witnesses testified that she intended to reside at the Stoneham house.  While some family members testified that Mari referred to the Stoneham house as her home, other witnesses in contrast testified that Mari referred to the Gleaner house as her home, and one witness testified that Mari considered both houses her home.  Furthermore, testimony showed that Mari kept property and possessions at both houses.  Some witnesses testified that she kept more property at the Stoneham house, while other witnesses testified that she only left property at the Stoneham house that the Gleaner house could not hold.  Mari's mailing address was another point of conflicting accounts.  While friends and family mailed holiday and birthday cards to the Gleaner address, Mari received some important financial and legal mail at the Stoneham address, including her banking, tax, and credit card correspondence.  Mari's driver's license was registered to the Stoneham address, but her membership forms for several art and gardening groups listed the Gleaner address.

We recognize that the record does not unambiguously support plaintiff's contention that Mari resided primarily at Stoneham house, but there is evidence in the record tending to cast doubt on whether Mari resided primarily at Gleaner house.  Although Mari apparently spent the majority of her overnights at Gleaner house, we do not deem that fact dispositive by itself.  As discussed, residence requires more than mere presence, and *primary* residence requires more than a bare majority of time.  Thus, Mari's overnights are important, but must be considered in conjunction with her expressed intentions and understandings, and her other conduct.  At a

minimum, there is ample evidence tending to suggest that Mari resided in both houses.[3]  We conclude that the evidence in the record, when viewed in the light most favorable to plaintiff and without drawing any conclusions regarding credibility, permits reasonable minds to differ as to whether Mari *primarily* resided at Gleaner house.  Defendant was therefore not entitled to judgment as a matter of law regarding its liability under the Policy.

## VII.  CONCLUSION

We conclude that the trial court erred in finding the terms of the Umbrella and the terms of the Policy to be ambiguous.  We further conclude that the trial court erred in failing to grant summary disposition in favor of defendant regarding its liability under the Umbrella.  However, the trial court correctly found a genuine question of material fact for the jury to decide regarding defendant's liability under the Policy.  Accordingly, the trial court's denial of defendant's motion for summary disposition is reversed as to the Umbrella and affirmed as to the Policy, and we remand for further proceedings.  We do not retain jurisdiction.  No costs, neither party having prevailed in full.  MCR 7.219(A).

/s/ Jane E. Markey
/s/ Amy Ronayne Krause

---

[3] Because neither contract uses the term "domicile" and both use the term "residence," we decline to consider defendant's alternative argument regarding "domicile.  Our Supreme Court has clarified that the terms "residence" and "domicile" are legally distinct despite having been historically treated as synonymous; and especially relevant in this case, "a person may have only one domicile, but more than one residence."  See *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 494-501; 835 NW2d 363 (2013).  Pursuant to the plain language of the Policy, the issue in this matter is Mari's "primary residence," if any; *not* her "domicile."