*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMIE DOLPH,

               Plaintiff-Appellant,

and

SOUTHEAST MICHIGAN SURGICAL
HOSPITAL, INTEGRATED HOSPITAL
SPECIALISTS, PRECISION SURGICAL
ASSOCIATES, PC, ALLIANCE ANESTHESIA,
PLLC, INSIGHT ANESTHESIA, PLLC,

               Intervening Plaintiffs-Appellees,

v

AUTO OWNERS INSURANCE COMPANY,

               Defendant-Appellee.

UNPUBLISHED
May 29, 2026
1:00 PM

No. 369825
Oakland Circuit Court
LC No. 2022-197943-NF

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

After she was involved in a motor-vehicle accident, plaintiff, Jamie Dolph, sought personal protection insurance (PIP) benefits from her no-fault insurer, defendant, Auto Owners Insurance Company (Auto Owners). After initially paying Dolph's claims, Auto Owners investigated the matter, determined that the claims were fraudulent, and denied them. Thereafter, Dolph filed this action, which eventually proceeded to a seven-day jury trial. Dolph appeals by right the trial court's judgment of no cause of action entered on the jury's verdict. On appeal, Dolph raises arguments regarding her trial, including: (1) the trial court erred by allowing evidence of her alleged fraud, by instructing the jury regarding fraud, and by allowing a question on the verdict form pertaining to fraud, (2) defense counsel engaged in improper conduct, (3) the trial court abused its discretion by dismissing Juror 4, (4) the trial court erred by instructing the jury on mitigation of damages when it prevented her from introducing documentary evidence of mitigation, and (5) the cumulative effect of the errors requires a new trial. For the reasons discussed in this opinion, we conclude that Dolph's arguments are not meritorious and affirm.

-1-

## I. FACTUAL BACKGROUND

Dolph filed this action for PIP benefits after she was involved in a motor-vehicle accident on Friday, August 9, 2019, while driving home from work. She was stopped at a red light when she was rear-ended by a vehicle that Morgan Poor was driving at approximately 20 miles per hour. Dolph "jolted" in her seat, and her body rocked back and forth. She called 911 to report the accident and then got out of her vehicle to talk to Poor. When she got back into her vehicle and sat in the driver's seat, her back started to hurt. She realized that she did not have Poor's insurance information and again got out of her vehicle to obtain it. Afterward, when she sat in her driver's seat, her back started hurting more. To alleviate her pain, she sat sideways on the seat, leaning outside the vehicle.

When the police arrived, Dolph told the officer that her back hurt and responded affirmatively when the officer asked if she needed an ambulance. EMS arrived and transported her to the hospital. At the hospital, Dolph complained of middle-to-lower-back pain and chest pain but denied any neck pain. She told Dr. Gary Pilchak that her back pain radiated down to her knee and worsened with movement. Dr. Pilchak conducted a physical examination and ordered x-rays and a CT scan. He noted tenderness in areas of Dolph's mid-to-lower back and noted that she had full range of motion. A radiologist interpreted a CT scan of Dolph's lumbar and thoracic spine as unremarkable, and x-rays of her hip and pelvis revealed no acute abnormality. Dr. Pilchak diagnosed Dolph with an acute low-back strain and an acute left-hip contusion. He administered ibuprofen and noted that she had already been administered morphine intravenously in the ambulance but still had discomfort. He directed her to follow up with her primary-care physician.

On Monday morning, Dolph went to her job at a Sherwin-Williams paint store, but she was unable to lift even a one-gallon can of paint. She called her primary-care physician, Dr. Michael Wayne, and treated with him that day. She told Dr. Wayne that she had middle- and lower-back pain that was acute, constant, sharp, and stabbing. She reported that her pain had grown worse over the weekend. Dr. Wayne's records reflected that Dolph was in moderate pain with no pain radiating down her legs. His physical examination revealed moderate tenderness. His records also indicated that Dolph had a history of back pain dating back to April 2, 2018, several months before the motor-vehicle accident. Dr. Wayne diagnosed Dolph with thoracic and lumbar pain, recommended that she not return to work, and referred her to physical therapy.

Dolph returned to Dr. Wayne's office two days later, complaining of back pain, muscle spasms, and stiffness. He again conducted a physical examination, which revealed moderate tenderness, and he again recommended that she not return to work. He filled out a Michigan no-fault insurance form indicating that Dolph was unable to perform any of her job functions because of the accident, including bending, lifting, climbing, pulling, and pushing, and she claimed PIP benefits from Auto Owners. Dolph continued to treat with Dr. Wayne because of back pain, and he eventually referred her to Dr. Eric Kovan, a physiatrist.

Dr. Kovan prescribed medication to Dolph, administered epidural and other injections, and attempted to alleviate her pain. In January 2020, he referred her to Dr. Michael Kapsokavathis, an orthopedic surgeon who specializes in spinal surgery. Dr. Kapsokavathis performed surgery on Dolph's spine on January 31, 2020, June 3, 2020, and June 13, 2022. Auto Owners investigated Dolph's claims; it obtained surveillance footage of her activities and required her to submit to an

examination under oath. It denied coverage until it completed its investigation regarding her injuries and the medical necessity of her treatment. Dolph filed this action for PIP benefits against Auto Owners. She sought lost wages, replacement services, and expenses for her care, recovery, and rehabilitation. Several of her healthcare providers filed intervening complaints against Auto Owners, seeking payment for services rendered to Dolph.

Before trial, Auto Owners moved for a special jury instruction and to include a question on the verdict form pertaining to fraud. It argued that it had become clear during the pendency of the case that Dolph misrepresented key aspects of her claim. Specifically, she claimed that she required assistance with activities of daily living (ADLs) because she was unable to bend, but she was observed loading and unloading groceries. She also claimed replacement services for that activity on the same day that she was observed performing the task herself. In addition, she claimed replacement services covering days on which she was on vacation. At her deposition, Dolph admitted that she made claims for services she did not receive. Auto Owners argued that, under *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014), abrogated in part by *Williams v Farm Bureau Mut Ins Co of Mich*, 335 Mich App 574; 967 NW2d 869 (2021), Dolph's fraudulent activity barred her claim. Auto Owners requested a jury instruction directing the jury that if it found Dolph made a false material misrepresentation, coverage was precluded, and no damages could be awarded. Auto Owners also requested a question on the verdict form in accordance with the jury instruction.

Dolph opposed Auto Owners's motion, arguing that she abandoned her claim for replacement services and sought only medical expenses and wage-loss benefits. She maintained that Auto Owners never asserted a counterclaim alleging fraud despite being aware of her misrepresentations and that evidence regarding replacement services was irrelevant and unfairly prejudicial. In a supplemental brief, Auto Owners acknowledged that *Meemic Ins Co v Fortson*, 506 Mich 287; 954 NW2d 115 (2020), and *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719; 957 NW2d 858 (2020), "greatly limited the fraud defense" by requiring that the fraud must have been committed by a named insured and must have occurred presuit, but Auto Owners maintained that the jury must still decide the issue. Dolph responded that all her alleged fraud occurred after the procurement of the policy and involved household-replacement services, which she was not claiming at trial. Moreover, she argued that, under recent caselaw, fraud committed after the procurement of a policy may not be used as grounds to deny coverage.

Similarly, Dolph moved in limine to preclude any reference at trial to PIP benefits she was not claiming, "such as replacement services." She argued that the evidence was irrelevant under MRE 401 and 402 and that its admission would be unfairly prejudicial under MRE 403. Auto Owners opposed the motion, asserting that Dolph sought to preclude reference to replacement services because of the fraud she committed regarding replacement services. It maintained that although Dolph claimed she was unable to perform ADLs, such as driving, grocery shopping, and meal preparation, surveillance video showed her grocery shopping the day before one of her surgeries. She also claimed replacement services for the entire month of November 2019 although she was at Disney World in Florida for eight days that month. Auto Owners argued that the evidence was relevant because it pertained to whether Dolph's injuries arose out of the accident, whether her claimed expenses were reasonably necessary, and whether her claims were in any way fraudulent.

During oral argument on Dolph's motion, defense counsel acknowledged recent caselaw limiting the fraud defense, but he argued that the jury was required to decide the issue, and "there's no way for the jury to decide it if it's not on the verdict form." He also maintained that Dolph dropped her replacement-services claim because Auto Owners discovered that the claim was fraudulent. Counsel asserted, "So, you can't commit fraud, lie, and then say I drop the claim. So, don't tell the jury about it. It goes to her credibility." The court agreed that "it goes to her credibility," and "[f]raud is still relevant." Dolph's attorney then conceded that Auto Owners "should be able to present the household service evidence to question her credibility," but argued against a jury instruction and question on the verdict form regarding the issue. Defense counsel responded:

> But Judge, we denied the claim for fraud. We said, look, this is a fraudulent claim. We denied it. We didn't pay the bills. We're going to tell the jury that's why we did it. The jury has to decide whether we were right or wrong on that. Now, how do they do that if you just say, was she injured? Did she incur bills? How do they decide whether we were right or wrong in our fraud denial if you don't ask them do you agree or disagree that fraud was committed. I just don't see any way to have the jury make a decision unless you instruct them on it, and say, okay, decide this question.

The trial court ultimately agreed with Auto Owners, determining that Dolph's abandonment of her replacement-services claim did not "wipe[] the fraud out" and that the issue was a question of fact for the jury to determine.

At trial, both Dr. Kovan and Dr. Kapsokavathis testified that Dolph's injuries arose out of the accident. Auto Owners's expert witnesses, Dr. Adil Ali, Dr. Adeel Khalid, and Dr. Stanley Lee disagreed and testified otherwise. The parties and the trial court discussed at length the wording of the question on the verdict form pertaining to fraud. Dolph's attorney proposed limiting the question to fraud involving replacement services only, and the trial court agreed. The question on the verdict form read: "Did Jamie Dolph make fraudulent statements or engage in fraudulent conduct with respect to her claims for household services?" The jury determined that Dolph did not sustain an accidental bodily injury arising out of the accident and answered "NO" to the question about fraud. Thereafter, the trial court entered a judgment of no cause of action. This appeal then followed.

## II. FRAUD

### A. STANDARDS OF REVIEW

We review for an abuse of discretion a trial court's decision whether to admit evidence but review de novo preliminary legal determinations regarding admissibility. *Shivers v Covenant Healthcare Sys*, 339 Mich App 369, 373; 983 NW2d 427 (2021). A "trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Berryman v Mackey*, 327 Mich App 711, 717; 935 NW2d 94 (2019). We review de novo a challenge to a jury instruction. *Lewis v LeGrow*, 258 Mich App 175, 211; 670 NW2d 675 (2003). Likewise, we review de novo the trial court's determination to include a question on a verdict form. See *Jimkoski v Shupe*, 282 Mich App 1, 8-11; 763 NW2d 1 (2008). "Instructional error

-4-

warrants reversal if the error resulted in such unfair prejudice to the complaining party that the failure to vacate the jury verdict would be inconsistent with substantial justice." *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 8; 651 NW2d 356 (2002) (quotation marks and citations omitted). Similarly, MCR 2.613(A) provides:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

### B. ANALYSIS

Dolph argues that the trial court erred by admitting evidence of her purported fraud regarding her claim for household-replacement services. She also challenges the trial court's decisions to instruct the jury regarding fraud and to include a question on the verdict form pertaining to fraud. We conclude that the trial court did not abuse its discretion by admitting evidence of Dolph's alleged fraud because it was relevant to her credibility. We likewise conclude that the trial court did not err by instructing the jury regarding the alleged fraud or by including the question pertaining to fraud on the verdict form.

Relevant evidence is generally admissible, and irrelevant evidence is inadmissible. *Kuebler v Kuebler*, 346 Mich App 633, 654; 13 NW3d 339 (2023); MRE 402. At the time of trial, MRE 401 provided that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[1] Witness credibility is a material issue, and evidence that relates to witness credibility is always relevant at trial. See *Lewis*, 258 Mich App at 211; see also *People v Spaulding*, 332 Mich App 638, 660; 957 NW2d 843 (2020) ("Credibility of a witness is almost always at issue, and, thus, evidence bearing on that credibility is always relevant."). A court may exclude relevant evidence under MRE 403 if the danger of unfair prejudice outweighs the probative value of the evidence. *Shaw v Ecorse*, 283 Mich App 1, 26; 770 NW2d 31 (2009). "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Id*. (quotation marks and citation omitted).

The trial court did not err by admitting evidence of Dolph's alleged fraud pertaining to household-replacement services because the evidence was relevant to her credibility. Dolph contends that the evidence was not relevant to any claim that the jury was tasked with determining, but witness credibility is always relevant. *Spaulding*, 332 Mich App at 660. Therefore, the evidence was relevant notwithstanding that Dolph's household-replacement-services claim, which she abandoned before trial, was not submitted to the jury. Moreover, the evidence was not unfairly prejudicial under MRE 403 because it was not merely marginally probative. Dolph's credibility

---

[1] Our Supreme Court amended the Michigan Rules of Evidence after trial in the instant case. We refer to the Rules of Evidence in effect at the time of trial.

regarding the benefits she sought and whether she sustained her injuries because of the accident was directly relevant to the issues the jury was required to determine.

"Jury instructions should include all the elements of the plaintiff's claims and should not omit material issues, defenses, or theories if the evidence supports them." *Cox*, 467 Mich at 8 (quotation marks and citation omitted). Auto Owners maintained that Dolph's claims were fraudulent, and it presented evidence regarding Dolph's alleged fraud. The jury instruction pertaining to fraud was therefore proper. Moreover, the question on the verdict form was limited to fraud regarding household-replacement services rather than asking whether Dolph committed fraud generally. The question was limited to household-replacement services because Dolph's attorney requested that it be so limited. Defense counsel opposed limiting the question to replacement services based on Auto Owners's theory that Dolph's claims were fraudulent for other reasons as well, but the trial court agreed with Dolph's attorney and limited the question to whether Dolph engaged in fraudulent activity or made fraudulent statements with respect to household-replacement services. Although Dolph now argues that replacement services were irrelevant because she abandoned her replacement-services claim before trial, her attorney sought to limit the fraud question as such. A party "may not assign as error on appeal something that she deemed proper in the lower court because allowing her to do so would permit [her] to harbor error as an appellate parachute." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

Relying on *Williams*, Dolph contends that an insurer may not deny mandatory PIP coverage based on an allegation of fraud that is unrelated to the procurement of the policy. Dolph's argument is incorrect. Recent caselaw does not give persons "the green light" to assert and pursue fraudulent claims. In *Meemic*, 506 Mich at 304 n 10, our Supreme Court recognized that "[a]n insurer can reject fraudulent claims without rescinding the entire policy." The Court also recognized that MCL 500.3148(2) allows an insurer to collect attorney fees for having to defend against a fraudulent claim. *Id*. In *Williams*, 335 Mich App at 583, this Court stated:

> Contrary to defendant's suggestion, limiting no-fault antifraud provisions to fraud in the inducement—as required by *Meemic*—will not leave no-fault insurers without recourse in the event of a fraudulent claim. An insurer maintains the power to deny claims or parts of claims it believes fraudulent. The plaintiff then bears the burden of filing suit and ultimately proving that they were injured in an auto accident and that the injury resulted in reasonable and necessary medical care and other covered expenses.

The *Williams* Court further stated, "A fact-finder is free, and has always been free, to conclude that some or all of a plaintiff's claimed benefits were properly denied by a defendant insurer." *Id*. at 586. Accordingly, Dolph's assertion that a defendant may not deny a claim it believes to be fraudulent lacks merit.

Further, Dolph asserts that the language of Auto Owners's policy does not authorize it to deny a claim based on fraud. The policy states:

> **We** will not cover any person seeking coverage under this policy who has made fraudulent statements or engaged in fraudulent conduct with respect to procurement of this policy or to any **occurrence** for which coverage is sought.

The policy defines "occurrence" as "an accident that results in **bodily injury** or **property damage** and includes, as one **occurrence**, all continuous or repeated exposure to substantially the same generally harmful conditions." Dolph maintains that her alleged fraud did not pertain to an "occurrence," as defined in the policy, because it did not pertain to the accident itself. Dolph's reading of the policy language is overly narrow. Her alleged fraudulent statements related to the accident regarding which she sought PIP benefits.

Finally, because the jury determined that Dolph did not commit fraud with respect to her claim for household-replacement services, she is not entitled to relief. As previously stated, MCR 2.613(A) precludes relief regarding "[a]n error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties" unless the failure to grant relief is "inconsistent with substantial justice." Because the jury determined that Dolph did not commit fraud with respect to household-replacement services, she cannot establish that denying her a new trial is inconsistent with substantial justice.

## III. DEFENSE COUNSEL'S CONDUCT

Dolph next argues that defense counsel engaged in misconduct during trial by making unfounded claims involving lies, fraud, and conspiracy about Dolph's evidence and witnesses. She maintains that Auto Owners's attorney repeatedly referred to her medical providers as "track-two doctors" who did not specialize in treating patients and only sought to convince juries to award plaintiffs money. She asserts that counsel's remarks suggested that her medical providers could not be trusted and that there existed a conspiracy between "tv" or "800" lawyers and "track-two" doctors, who provide unnecessary treatment to obtain favorable jury verdicts. Because Dolph failed to raise this issue in the trial court, it is not preserved for our review. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) ("To preserve an issue, the party asserting error must demonstrate that the issue was raised in the trial court."). This Court is not obligated to address unpreserved claims of error. *Id*. We may overlook preservation requirements, however, "if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. at 289-290 (quotation marks and citation omitted). Regarding unpreserved claims of error asserting attorney misconduct, we "must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial." *Guerrero v Smith*, 280 Mich App 647, 651; 761 NW2d 723 (2008). We conclude that Dolph was not denied a fair trial.

"The trial court has a duty to assure that the parties before it receive a fair trial." *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 293; 602 NW2d 854 (1999). Although an attorney must advocate for his client, "parties are entitled to a fair trial on the merits of the case, uninfluenced by appeals to passions or prejudice." *Id*. at 292 (quotation marks and citation omitted). An attorney must not attempt "to divert the jurors' attention from the merits of the case and to inflame the passions of the jury." *Id*.

In *Badalamenti*, a medical malpractice action, this Court determined that the plaintiff's attorney "completely tainted" the trial by engaging in misconduct. *Id*. at 290. This Court stated:

For example, through innuendo and direct attack, plaintiff's lead trial counsel repeatedly and with no basis in fact accused defendants and their witnesses of engaging in conspiracy, collusion, and perjury to cover up their alleged malpractice. Plaintiff's lead trial counsel continually accused defense witnesses of fabricating, in response to the instant litigation, the defense that plaintiff had a rare, severe reaction to streptokinase that caused his injuries. Indeed, this appeared to be his main theme. Plaintiff's lead trial counsel also repeatedly belittled defense witnesses and suggested, again, with no basis in fact, that they destroyed, altered, or suppressed evidence. Plaintiff's lead trial counsel further insinuated, relentlessly, outrageously, and with no supporting evidence, that while plaintiff lay "neglected" in the coronary care unit of the hospital, Dr. Forst "abandoned" plaintiff to engage in a sexual tryst with a nurse during the afternoon of March 16. Plaintiff's lead trial counsel repeatedly argued that money and greed were the defendants' prime motivation and the overriding interest guiding their treatment of plaintiff and their desire to cover up their "mistakes." Counsel in turn linked these concepts with references to Beaumont Hospital's corporate power and with defendants' ability to hire the "dream team" to defend them and to raise as many defenses as they wanted no matter how "preposterous." Plaintiff's lead trial counsel also inappropriately appealed to the jurors' self-interest as taxpayers where, in response to a defense witness' testimony regarding vocational rehabilitation services available to plaintiff through a state-funded agency, counsel lambasted the defense for suggesting that the "taxpayers" should pay for vocational rehabilitation services for plaintiff rather than the "wrongdoers." Again, we emphasize that these accusations, allegations, and insinuations had no reasonable basis in the evidence presented and were completely improper. [*Id*. at 290-291.]

Similarly, in *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 770; 685 NW2d 391 (2004), our Supreme Court determined that the plaintiff's attorney "engaged in a systematic effort to divert the jury from its true task . . . and instead sought to inflame passion and to incite the jury to punish the defendant even while disclaiming that he was seeking punitive damages." In that case, a main theme of the plaintiff's attorney was "to equate plaintiff with the victims of the Holocaust." *Id*. at 771.

Unlike *Badalamenti* and *Gilbert*, the record in this case shows that defense counsel's arguments were consistent with the evidence presented. Auto Owners's theories were that Dolph did not sustain an injury arising out of the accident, any pain she suffered was from a preexisting condition, she committed fraud regarding replacement services and the extent and onset of her injuries, Dr. Kovan and Dr. Kapsokavathis treated Dolph only for financial reasons, and the three back surgeries that Dr. Kapsokavathis performed were unnecessary. During trial, defense counsel presented evidence consistent with these theories. Auto Owners's evidence showed that the accident was a minor "fender-bender," Dolph submitted a form requesting household-replacement services for a period of time during which she was in Florida, and surveillance footage played during trial showed Dolph grocery shopping and performing activities during a time that she claimed she required her mother's assistance to bathe and get dressed.

Moreover, defense counsel's arguments regarding Dr. Kovan, Dr. Kapsokavathis, and "track-one" and "track-two" doctors was consistent with counsel's questioning of the doctors

during their trial depositions taken approximately one week before trial. Dolph's attorney attended the depositions and could not have been surprised by defense counsel's arguments made during trial in light of his questioning during the depositions. Because defense counsel's arguments were consistent with the evidence presented and were not intended merely to inflame the passions of the jurors or divert their focus from the evidence, Dolph was not denied a fair trial.

## IV. JUROR NUMBER 4

Dolph next argues that the trial court abused its discretion by removing Juror 4 without cause and without any evidence that the juror was biased. We review for an abuse of discretion a trial court's decision to dismiss a juror. *Harrison v Grand Trunk W R Co*, 162 Mich App 464, 471; 413 NW2d 429 (1987). In addition, a trial court's determination regarding "a juror's impartiality will be reversed on appeal only if it represents a clear abuse of discretion." *Id*.

On the third day of trial, Juror 4 wrote the trial court a note indicating she realized during Dr. Kovan's testimony that she underwent a medical procedure at Dr. Kovan's medical clinic, although the procedure was performed by a different doctor. The juror stated that the procedure occurred four-to-five years previously, and she felt she could still decide the case based on the facts but understood "that this changes things going forward." Counsel for Dolph and the intervening plaintiffs stated they were "fine" with allowing the juror to remain on the jury but defense counsel preferred that she be dismissed. Defense counsel expressed concern regarding Juror 4's familiarity with Dr. Kovan's clinic and stated that the juror's views regarding the clinic were unknown. The trial court dismissed the juror, stating that the court "had a spare" juror and was "trying to pellet proof" the verdict. The court also remarked that it did not want a mistrial.

A trial court has "broad authority" to remove a juror during trial. *People v Caddell*, 332 Mich App 27, 41; 955 NW2d 488 (2020). A juror's exposure to an outside influence may "impede her ability to serve on the jury." *Id*. at 42. Juror 4 realized during trial that she was a patient at Dr. Kovan's clinic years previously. The juror's prior experience with the clinic constituted an "outside influence" that could have impeded her ability to serve on the jury. Dolph argues that the mere fact that Juror 4 was treated at the clinic four-to-five years previously did not indicate that she was "biased for or against a party" as stated in MCR 2.511(E)(2). Dolph also contends that previous treatment at the clinic did not create an inference that the juror's state of mind would prevent her from "rendering a just verdict" or show that she had "formed a positive opinion on the facts of the case or on what the outcome should be" as stated in MCR 2.511(E)(3).

The provisions of MCR 2.511(E) on which Dolph relies pertain to challenges for cause during the jury-selection process. Juror 4 was dismissed during trial, however, and not during the jury-selection process. The trial court did not purport to rely on MCR 2.511(E) in doing so, and Dolph has offered nothing to support any suggestion that the court could only dismiss Juror 4 upon finding one of the circumstances expressly enumerated by that provision was met. The trial court dismissed Juror 4 not because it found she was biased or had formed an opinion about the case, but rather, because there existed the possibility of bias given her previous experience at Dr. Kovan's clinic, and more than enough jurors had been empaneled to continue trial without Juror 4. Dolph has not shown that the court clearly abused its discretion by dismissing Juror 4 on that basis.

## V. REMAINING ISSUES

Dolph also argues that the trial court erred by instructing the jury on mitigation of damages regarding her wage-loss claim when it prevented her from admitting documentary evidence showing that she collects social security disability insurance benefits as a result of the accident. Because the jury determined that Dolph did not suffer an injury arising out of the accident and did not reach the issue of damages, however, Dolph's argument is moot. "An issue is moot if an event has occurred that renders it impossible for the court to grant relief." *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). Since the jury did not award Dolph damages, any error regarding the trial court's instruction on mitigation of damages is moot.

Finally, Dolph argues that she is entitled to a new trial because of the cumulative effect of the errors that occurred. In order for cumulative error to warrant reversal and require a new trial, "consequential errors must result in substantial prejudice that denies the aggrieved party a fair trial." *Lewis*, 258 Mich App at 200. "[T]here can be no cumulative effect where there are no errors." *Id*. at 200-201. Because no error occurred, there is no cumulative effect of errors that substantially prejudiced Dolph.

Affirmed.

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani

-10-